**HARRINGTON HALEY LLP, Plaintiff,**

v.

**NUTMEG INSURANCE COMPANY, Defendant.**

No. 97 Civ. 4289(LAK).

United States District Court,
S.D. New York.

March 23, 1999.

**404**

James Harrington, Harrington & Henry LLP, for Plaintiff.

Joel Appelbaum, Appelbaum, Bauman & Appelbaum, for Defendant.

## MEMORANDUM OPINION

KAPLAN, District Judge.

The plaintiff in this case is a law firm that is defending two former officials of the Town of Delaware, New York (the "Town"), in other litigation before this Court relating to a land use controversy. Plaintiff, as assignee of the Town's claim against its carrier, sues for certain of the costs of defense. The fundamental issue is whether pretrial rulings in the land use case resulted in the termination of the carrier's duty to defend. Assuming that it did not, the carrier disputes the reasonableness of plaintiff's charges. This is the Court's decision after trial.

### Facts

The controversy concerning the alleged termination of the carrier's duty to defend depends upon the complex and interrelated histories of both the land use litigation in this Court and the coverage litigation in the state courts that preceded this action.

*The Early Stages of the* DeFalco *Action*

In September 1990, Joseph DeFalco and others sued William Dirie and V. Edward Curtis, both former Town officials, and other defendants in consequence of a land use dispute in the Town (*"DeFalco"*).[1] The case initially was assigned to Judge Goettel.

The *DeFalco* complaint alleged three causes of action against Dirie and Curtis. The first alleged extortion in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO").[2] The second claimed deprivation of plaintiffs' civil rights in violation of 42 U.S.C. § 1983. The sixth sought review of certain administrative action by the Town, relief typically available in the state courts under Article 78 of the Civil Practice Law and Rules.

The *DeFalco* defendants moved to dismiss the complaint. Those motions resulted in a decision on April 24, 1991, in which, insofar as is relevant here, Judge Goettel dismissed the Section 1983 claim in its entirety with leave to replead. This prompted the *DeFalco* plaintiffs to file an amended complaint in May 1991 which, with modifications not relevant here, asserted the same claims as the original complaint against Dirie and Curtis. Certain defendants moved to dismiss the amended complaint as well, but the motions had not yet been decided by the time the coverage litigation that gave rise to this action was commenced. Thus, when the coverage litigation began, Dirie and Curtis were defendants in *DeFalco* on three claims for relief, one under RICO, one under Section 1983, and the third in substance a state court-style Article 78 proceeding.

*The State Court Coverage Litigation and Developments in* DeFalco

At the time *DeFalco* was commenced, the Town was insured under a public entity liability policy issued by Nutmeg Insurance Company ("Nutmeg"). The *DeFalco*

---

1. *DeFalco v. Dirie,* 90 Civ. 5732(CLB).

2. 18 U.S.C. § 1961 *et seq.*

complaint was presented to Nutmeg with the request that it provide a defense to Dirie, Curtis and the other Town officials named as defendants. Nutmeg initially declined to defend on the ground that the *DeFalco* action was based entirely on allegations of a criminal conspiracy. In time, Nutmeg, without changing its position, offered the public official defendants a defense on condition that they abandon claims for prior defense costs and accept legal representation provided by Nutmeg. All of the public officials save Dirie and Curtis accepted that offer. Dirie and Curtis have been represented throughout the *DeFalco* action by plaintiff and its predecessor firms.

In December 1991, Dirie and Curtis commenced an action against Nutmeg in New York Supreme Court, Sullivan County, alleging breach of the insurance policy and seeking, *inter alia,* a declaration that they were entitled to retain counsel of their own choice at Nutmeg's expense (the "Coverage Case").[3]

On March 31, 1992, while the Coverage Case was in its early stages, Judge Goettel ruled on the motions to dismiss the amended complaint in *DeFalco.* Insofar as is relevant here, he dismissed the Section 1983 and Article 78–type claims in their entirety against all defendants.[4] This left only the RICO claim pending against Dirie and Curtis. But just days later, the *DeFalco* plaintiffs, pursuant to leave, filed a second amended complaint. Insofar as it was brought against Dirie and Curtis, it

alleged three causes of action: Count I was brought under RICO, Count II under Section 1983, and Count IV under CPLR Article 78. Thus, it purported to revive the Section 1983 and Article 78 claims previously dismissed by Judge Goettel.

In March 1993, Dirie and Curtis moved for partial summary judgment in the Coverage Case. Nutmeg cross-moved for summary judgment dismissing the complaint. On May 17, 1993, the Supreme Court, Sullivan County, granted Nutmeg's cross-motion and denied the motion of Dirie and Curtis, who promptly appealed to the Appellate Division, Third Department.

Dirie and Curtis prevailed on appeal. On May 12, 1994, the Third Department reversed the order appealed from and granted the Dirie–Custis motion for partial summary judgment. The court began from the proposition that an insurer's duty to defend is extremely broad and depends not upon a party's characterization of the claims, but upon the facts alleged.[5] It reasoned that an insurer seeking to deny coverage based on a policy exclusion, as was the case with respect to the *DeFalco* claim, must show that the "allegations of the complaint cast that pleading solely and entirely within the policy exclusion and, further, that the allegations, in toto, are subject to no other interpretation."[6] As the policy explicitly covered claims for violations of civil rights, the court held that "the underlying facts [were] covered by the subject policy" and that the carrier was obliged to defend.[7] It went on to hold

---

**3.** *Curtis v. Nutmeg Ins. Co.,* Sullivan Co. Clerk's Index No. 29–92.

**4.** *DeFalco,* memorandum decision (Mar. 31, 1992) (hereinafter the "1992 Decision").

Judge Goettel found the Section 1983 claim, which was premised on an alleged due process violation, wanting on the ground that the existence of established state court remedies for the conduct complained of was all the process that was due under *Parratt v. Taylor,* 451 U.S. 527, 543–44, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). (1992

Decision, at 6–7) He declined to entertain the Article 78 claim on the ground of abstention. (*Id.* at 11–12)

**5.** *Curtis v. Nutmeg Ins. Co.,* 204 A.D.2d 833, 612 N.Y.S.2d 256, 258 (3d Dept.1994), *leave dismissed,* 84 N.Y.2d 1027, 623 N.Y.S.2d 182, 647 N.E.2d 454 (1995).

**6.** *Id.* (quoting *Int'l Paper Co. v. Cont. Cas. Co.,* 35 N.Y.2d 322, 325, 361 N.Y.S.2d 873, 876, 320 N.E.2d 619 (1974)) (internal quotation marks omitted).

**7.** *Id.*

that Dirie and Curtis were entitled to a defense by counsel of their choice, at Nutmeg's expense, because Nutmeg had a conflict of interest in that it would be obliged to indemnify for any civil rights liability, but would not be so obliged with respect to RICO liability, which was "clearly excluded under the policy."[8] It therefore declared that Nutmeg was obliged to defend *DeFalco* and to pay the reasonable expenses of counsel chosen by Dirie and Curtis.

### Later Developments in the DeFalco Action

Following the Third Department's decision in the Coverage Case, *DeFalco* was reassigned to Judge Parker of this Court. Some months later, Dirie and Curtis, among others, moved to dismiss, or for summary judgment dismissing, the second amended complaint.

Judge Parker ruled on the pending motions on March 13, 1996. He noted that Judge Goettel, insofar as is relevant here, previously had dismissed the Section 1983 and Article 78 claims in the amended complaint and went on to conclude that "nothing in the second amended complaint changes Judge Goettel's original rulings."[9] The final decretal paragraph of the decision stated that defendants' motions were denied except that their "motion to dismiss Plaintiffs' claim pursuant to 42 U.S.C. § 1983 is granted."[10] The text of the decision, however, makes clear that the Article 78 claim was dismissed as well.[11] In consequence, Judge Parker's decision left RICO as the only theory of liability against Dirie and Curtis.

*DeFalco* was tried in December 1996 and resulted in a substantial jury verdict under RICO against Dirie, Curtis and other defendants. In a decision dated September 26, 1997, however, Judge Parker granted the defendants' motions for a new trial and vacated the judgment. The case was retried recently and again resulted in a sizable plaintiffs' verdict. Post-verdict motions are imminent.

### Later Developments in the Coverage Case

Following the Third Department's decision holding Nutmeg responsible for the reasonable costs of the defense of Dirie and Curtis in *DeFalco*, the New York Supreme Court, Sullivan County, referred the claim of Dirie and Curtis for attorney's fees previously incurred in *DeFalco* to a Judicial Hearing Officer. Following a five day trial, the JHO, former State Supreme Court Justice Robert C. Williams, on July 15, 1997, ruled on the claim of Dirie and Curtis for defense costs for the period from the inception of the *DeFalco* case through November 30, 1995. The JHO found that some of the work for which counsel to Dirie and Curtis, plaintiff in this case, sought compensation in fact was done in the interests of parties other than Dirie and Curtis. He therefore discounted the hours billed by the plaintiff law firm by one-third. He further found that the reasonable value of the services rendered was $230 per hour for Mr. Harrington—considerably less than the $300 per hour sought for Mr. Harrington, $140 per hour for his associate, and $60 per hour for his paralegal.[12] Judgment was entered on this

---

8. *Id.*, 612 N.Y.S.2d at 259.

9. *DeFalco*, order, Mar. 14, 1996, at 19–21 (hereinafter the "1996 Decision").

10. *Id.* at 21.

11. *Id.*

12. Findings of fact and conclusions of law, *Curtis v. Nutmeg Ins. Co.*, Sullivan Co. Clerk's Index No. 29/92.
   Plaintiff suggested in closing argument in this case that the JHO did not find that the $300 hourly rate sought in respect of Mr. Harring-

ton's services was unreasonable, only that the $230 rate awarded was reasonable. The contention is frivolous. As the JHO's findings and conclusions make clear, the hearing officer found that Nutmeg was "responsible only for the value of reasonable attorneys fees," stated that it would "fix and find as to reasonableness," and determined that "Mr. Harrington [was] entitled to be compensated in the amount of $230.00 an hour ..." *Id.* finding no. 5, conclusions 1–3. While the JHO did not say in so many words that $300 per hour was not reasonable, that finding necessarily is implicit in his rejection of the claim for a

award.[13]

*The Current Litigation*

Counsel for Dirie and Curtis, not surprisingly, appears to have sensed the way the wind was blowing before the JHO even before the decision was rendered on July 15, 1997. As the JHO's decision left open the issue of compensation for the defense of the *DeFalco* action for the period on and after December 1, 1995, he decided to seek another forum. In consequence, in June 1997, he commenced this action seeking to recover his fees and expenses incurred in the defense of Dirie and Curtis for the period December 1, 1995 to the date of the complaint on theories of breach of contract, *quantum meruit*, and account stated.[14]

There has been a fair amount of pretrial skirmishing and motion practice in this case, the details of most of which is not material here. Two points, however, do warrant mention.

■ First, Nutmeg sought partial summary judgment determining that plaintiff is collaterally estopped to challenge the hourly rates fixed by the JHO in the Cov-

erage Case. In an unreported decision dated August 7, 1998, this Court ruled that plaintiff is collaterally estopped to dispute that the rates found by the JHO were the reasonable rates for the period 1990 through December 1, 1995 but noted that the issue here—the reasonable rates for the period December 1, 1995 forward—is not precisely the same because of the difference in the time periods. The Court therefore denied Nutmeg's motion. As the rates for the immediately preceding period are evidence of the reasonableness of the rates for the subsequent period, however, the Court held also that the JHO's ruling was conclusive except to the extent that plaintiff establishes material differences between the factors informing the assessment of reasonableness in the period at issue here compared with the slightly earlier period at issue before the JHO.[15]

Second, Nutmeg sought partial summary judgment dismissing plaintiff's claim insofar as it seeks recovery for the period after March 13, 1996, the date of Judge Parker's decision, on the theory that that decision left only an uninsured RICO claim in the case, a claim which Nutmeg con-

---

$300 hourly rate and in any case is the only rational reading of his decision.

**13.** The judgment recently was affirmed. *Curtis v. Nutmeg Ins. Co.*, 681 N.Y.S.2d 620 (3d Dept.1998).

**14.** Plaintiff sues under the policy as assignee of the Town.

**15.** Order, August 7, 1998, at 3–4.

This conclusion is supported by a comment to Section 27 of the Restatement (Second) of Judgments, which states in pertinent part: "Sometimes, there is a lack of total identity between the matters involved in the two proceedings because the events in suit took place at different times. In some such instances, the overlap is so substantial that preclusion is plainly appropriate .... Preclusion ordinarily is proper if the question is one of the legal effect of a document whose effect was adjudicated in a prior action. And, in the absence of a showing of changed circumstances, a determination that, for example, a person was disabled, or a resident of the state, in one year will be

conclusive with respect to the next as well. In other circumstances the burden of showing changed or different circumstances should be placed on the party against whom the prior judgment is asserted." RESTATEMENT (SECOND) OF JUDGMENTS § 27, *cmt. c* (1982).

Thus, under the Restatement, the state court determination of the plaintiff's reasonable hourly rates for the period ending December 1, 1995 arguably is entirely conclusive for the subsequent period commencing on that date. At a minimum, that determination is conclusive absent plaintiff's proving that changed or different circumstances warrant a different result. *See also Greene v. United States*, 79 F.3d 1348, 1352–53 (2d Cir.), *cert. denied*, 519 U.S. 1028, 117 S.Ct. 582, 136 L.Ed.2d 512 (1996) (finding no change in controlling facts from one tax year to another); *Miller Brewing Co. v. Falstaff Brewing Corp.*, 655 F.2d 5, 9 (1st Cir.1981) (assuming that determination that putative trademark was generic at one time is conclusive for subsequent time absent proof by putative mark's proponent of substantially changed facts but rejecting claim of sufficient factual change).

tends it had no obligation to defend. The Court denied the application.[16]

## Discussion

### Nutmeg's Obligation to Defend DeFalco

Nutmeg contends that Judge Parker's March 13, 1996 decision dismissing the Section 1983 and Article 78 claims in the second amended complaint left only the RICO claim against Dirie and Curtis, that it had no obligation to defend the RICO claim, and that it therefore has no liability to plaintiff for the cost of defending *De-Falco* following the date of that decision. In view of plaintiff's concession at trial that no defense costs were incurred in the period December 1, 1995 through May 15, 1996, Nutmeg argues that it is entitled to judgment dismissing the complaint.

Plaintiff rejoins with a convoluted argument. It contends that the Third Department knew when it decided the appeal in the Coverage Case that the only claim remaining, as a result of Judge Goettel's earlier ruling, was the RICO count but nevertheless held that Nutmeg was obliged to provide a defense. Moreover, it argues that Judge Parker's 1996 ruling had no effect at all because Judge Goettel previously had dismissed all but the RICO claim. But it is unnecessary to deal with the intricacies of plaintiff's argument.

Nutmeg's argument rests on the Appellate Division's comment that "RICO claims . . . are clearly excluded under the policy . . .," which it construes as meaning that it had no obligation to defend the RICO claim. But the comment cannot be understood in isolation.

The appeal before the Third Department in the Coverage Case was from an order which held that the claims in *DeFalco* were not within the insuring provisions of Nutmeg's policy, in substance because the case arose out of an alleged criminal conspiracy and was not within the errors

and omissions insuring clause. As the appellate court recognized, however, the duty to defend under New York law is "exceedingly broad." It arises whenever *facts* are alleged which might bring any liability within the ambit of the carrier's duty to indemnify. The court noted also that a plaintiff's "characterization of the causes of action alleged in a complaint [is] not controlling." [17] In view of the specific policy coverage for injuries resulting from "violation of civil rights," it held "that the underlying facts [alleged in *DeFalco*] are covered by the subject policy" and that Nutmeg had a duty to defend .[18]

The comment on which Nutmeg places such heavy reliance was made in the discussion of an issue quite distinct from the existence of a duty to defend, viz. whether, given the existence of that duty, Dirie and Curtis had a right to a defense by counsel of their choice as opposed to counsel provided by Nutmeg. On that point, the Third Department said:

> "Considering defendant's breach of the insurance contract by a refusal to defend at the outset, *coupled with the RICO claims which are clearly excluded under the policy*, we find that defendant's interest in defending the Federal [*DeFalco*] action is in conflict with plaintiffs' interest." [19]

It went on to hold for Dirie and Curtis on the right to control the choice of counsel.

Taken in context, the Appellate Division's meaning is clear. Nutmeg was obliged to provide a defense, despite the existence of the RICO claim, because the complaint asserted "underlying facts" which, if proved, could have given rise to a covered liability. In ordinary circumstances, it perhaps could have discharged that duty by choosing and paying counsel to defend Dirie and Curtis. But, the court found, Nutmeg had a twofold conflict of

---

16.   Order, Aug. 7, 1998, at 1–2.

17.   *Curtis v. Nutmeg Ins. Co.,* 204 A.D.2d 833, 612 N.Y.S.2d at 258.

18.   *Id.*

19.   *Id.* (emphasis added).

interest with its insureds. First, its refusal to defend evidenced a disregard of the interests of its insureds. Second, and controlling for this purpose, it had a conflict because it was in the interests of Dirie and Curtis to have any liability on their part rest solely on the civil rights claim and not at all on the RICO claim, as Nutmeg would have been obliged to indemnify on the civil rights claim but not the RICO claim. For precisely the same reason, it was in Nutmeg's interest to have Dirie and Curtis found liable, if at all, only on the RICO claim. In consequence, the Appellate Division held that Dirie and Curtis were entitled to select their own counsel and that Nutmeg was obliged to pay the reasonable costs of defense.

Given the foregoing analysis, Nutmeg's contention that the Third Department's decision in the Coverage Case means that Judge Parker's dismissal of Section 1983 and Article 78 claims against Dirie and Curtis terminated its obligation to defend is simply wrong, even putting aside plaintiff's contention that the Third Department found a duty to defend even after Judge Goettel first had dismissed those claims years earlier. Simply put, the Third Department did not even say, much less hold, that the dismissal of the *DeFalco* plaintiffs' non-RICO theories had terminated, or would terminate, Nutmeg's obligation to defend.

▆▆▆ That brings us to what appears to be Nutmeg's remaining contention— that Judge Parker's 1996 decision (or, the Court supposes, Judge Goettel's 1992 decision) dismissing the non-RICO claims terminated Nutmeg's duty to defend irrespective of the effect of the Third Department's decision. On this point there is little to add to what the Third Department said in deciding the Coverage Case in the first place. Under New York law, a duty to defend exists if the plaintiff alleges facts which, if proved, could result in liability for which the carrier would be obliged to indemnify the insured.[20] If there is any possibility that this will result,[21] the insured is entitled to a defense irrespective of the plaintiff's characterization of the claims and even if the complaint also alleges claims which, if established, would be outside the policy's coverage.

In this case, the facts alleged in the various complaints filed by the *DeFalco* plaintiffs could have resulted in liability on the part of Dirie and Curtis for which Nutmeg would have been obliged to indemnify them. Although the non-RICO claims were dismissed several times and Nutmeg presumably would have no obligation to indemnify for purely RICO liability, there never has been any assurance that the case ultimately could not result in insured liability. Among the possibilities were amendment of the pleadings at trial to permit submission of non-RICO theories to the jury, an appellate reversal of the dismissal of the Section 1983 claim, and an order for a new trial. Accordingly, nothing has occurred since the Third Department's decision that warrants any alteration in its conclusion that Nutmeg was and remains obliged to provide Dirie and Curtis with a defense by counsel of their choosing.

*The Reasonableness of the Amounts Claimed*

Plaintiff claims that it billed, and Nutmeg is responsible for payment of, a total of $200,255.30 in respect of bills issued

---

**20.** An insurer must defend "[i]f the complaint contains any facts or allegations which bring the complaint even potentially within the protection purchased." *Technicon Elec. v. Amer. Home Assur. Co.,* 74 N.Y.2d 66, 73, 544 N.Y.S.2d 531, 533, 542 N.E.2d 1048 (1989). And it is the facts, not the allegations, which determine whether the insurer must defend. *Allstate Ins. Co. v. Mugavero,* 79 N.Y.2d 153, 162, 581 N.Y.S.2d 142, 147, 589 N.E.2d 365 (1992).

**21.** If the facts allege a covered act the insurer must defend whatever the ultimate merits of the case. *Fitzpatrick v. American Honda Motor Co.,* 78 N.Y.2d 61, 571 N.Y.S.2d 672, 673–74, 575 N.E.2d 90 (1991).

from December 1, 1995 to the date of commencement of this action,[22] of which $188,676 is for counsel fees and the balance for expenses incurred in the defense. Nutmeg resists this conclusion on the grounds that the hourly rate charged by plaintiff for Mr. Harrington's time is unreasonable and that the services all were not reasonably incurred.

*Hourly Rates*

In the main, plaintiff seeks recovery of $300 per hour for the services of Mr. Harrington, $140 for those of his associate, and $60 for those of his paralegals.[23] As previously noted, however, the Court has determined that plaintiff is collaterally estopped to contest that the reasonable hourly rates for these services in the period ending December 1, 1995 were $230, $140, and $60 per hour, respectively. The only basis open to plaintiff for contesting those hourly rates here would be proof that factors affecting the reasonableness of hourly rates for lawyers and paralegals—the background, training, standing and experience of counsel, the number of years counsel has been admitted to the bar, and the complexity of the litigation—changed materially between the period with respect to which plaintiff is estopped and the immediately ensuing period at issue in this case.

At trial, plaintiff attacked the hourly rates previously fixed in state court on two bases. It contended, first, that the rates billed were reasonable. In any case, it argued, the services during the period at issue here, unlike those at issue in the state court, included representation of Dirie and Curtis at trial, a service allegedly warranting a higher hourly rate. But plaintiff's arguments fall short of the mark.

To the extent that plaintiff seeks to establish that the $300 hourly rate it seeks for Mr. Harrington's services in *DeFalco* was reasonable, it seeks only to relitigate the issue already decided against it both in the state court and by this Court in ruling on the pretrial motions. It had its opportunity to seek to establish the reasonableness of its hourly rates. It lost. It is not entitled to another bite at the apple simply on the theory that this Court might disagree with the state court JHO.

■ The second of plaintiff's arguments at least is responsive to this Court's pretrial ruling in the sense that it seeks to differentiate the issue that was before the JHO in the state court from that now in question although the argument of course should have been made in response to defendant's motion for partial summary judgment on the basis of collateral estoppel, which it was not. Even assuming, however, that the contention is properly before the Court, it is rejected. While the evidence established that some attorneys charge more per hour for representation at trial than for pretrial work, the Court is not persuaded that this is generally true. Moreover, it is important to recognize that plaintiff and its predecessor billed its clients for Mr. Harrington's services at the same hourly rate for both trial and pretrial services. In consequence, the Court holds that the fact that the services at issue in this case included trial work while those at issue in the state court did not is insufficient to differentiate the issue now before this Court, for collateral estoppel purposes, from the issue already decided in the state court. Further, even if the preclusive effect of the state court judgment were disregarded insofar as it related to

**22.** The Court sustained defendant's objection to the introduction at trial of evidence of fees and expenses billed subsequent to the institution of the action on the basis of surprise and undue prejudice.

**23.** For reasons that are not clear from plaintiff's billings (PX 6), it seeks $195 per hour for eight hours devoted to the matter by Mr.

Harrington and $50 per hour for 3 hours devoted by another individual whom the Court assumes to have been a clerk or paralegal. As both of those figures are below the rates found by this Court to be reasonable, the Court has no reason to question them and therefore accepts those parts of the bills at face value.

services rendered in the trial of *DeFalco*, this Court would find that the reasonable hourly value of Mr. Harrington's services at trial was precisely the same as that for all other services rendered by him.

Accordingly, the Court finds that the reasonable hourly rates were $230 for Mr. Harrington, $140 for plaintiff's associate, and $60 for its paralegal.

*Reasonableness of Services*

That leaves Nutmeg's attack on the reasonableness of the time devoted to the defense of the *DeFalco* case, an attack which is notable principally for its perfunctory nature.

Nutmeg implies that some of the services reflected in plaintiff's bills either were not actually performed or that the hours were inflated. The argument rests on the facts that (1) Mr. Harrington was unable to say, of his own knowledge, precisely what services his paralegal performed on dates for which he recorded time but gave very general descriptions of the services rendered, and (2) plaintiff's bills included time spent by Mr. Harrington, his associate and his paralegal conferring with one another. These claims are entirely frivolous.

■ To begin with, it is not surprising that Mr. Harrington could not elaborate in detail on the exact meaning of time entries by employees of his firm other than himself—and it does not undercut plaintiff's claim in the slightest. Law firms typically have each lawyer, paralegal and other employee whose services are billed on the basis of time expended keep contemporaneous time records. Those records typically are, and in this case were, kept in the ordinary course of business. There is no reason to discount those records simply because the partner in charge of the matter lacks personal knowledge of the specific activities of other persons in the firm. That of course is not to say that Nutmeg could not have challenged them if challenge were warranted. It could have deposed everyone who worked on the matter

and—based on the testimony of the individuals in question, the records of what transpired in the case, and perhaps expert testimony—developed an evidentiary basis for questioning whether the work claimed to have been done was done at all or whether too much time was spent doing it. But it developed no such evidence.

■ The suggestion that Nutmeg is not obliged to pay for the time spent in internal conferences within the law firm, at least when made in the broad brush fashion advanced by Nutmeg, is equally meritless. The handling of cases by more than one lawyer and the use of paralegals is commonplace today. Frequently the complexity of matters requires it. The economic interests of clients usually is served by it because the more routine tasks can be done at lower cost by personnel with less training and experience who consequently are paid less and billed at lower rates. Thus, the conduct of litigation frequently is a joint endeavor involving the efforts of a number of individuals.

Any joint endeavor requires communication among those involved to ensure that everyone is working toward the same objective, that two people do not independently do the same thing twice, and that the insights and knowledge of all concerned are combined in the interest of achieving the common goal. In short, the right hand must know what the left hand is doing, and communication permits the transfer of that information. For these reasons, no one reasonably could suggest that the time spent by, for example, General Eisenhower and his officers discussing the invasion of Europe was not time reasonably devoted to the war effort and the national interest.

Litigation, to be sure, involves dramatically smaller stakes. But the same principle applies. Lawyers working on the same case must communicate about the conduct of the litigation. Time so spent is reasonably devoted to the client's interest and, in the absence of an agreement to the con-

trary, therefore compensable. That is not to say, of course, that internal law firm conferences cannot, in a given circumstance, go on to unreasonable lengths. They can. But there has been no showing that that occurred here.

It is undisputed that plaintiff and its predecessors devoted 456.6 hours of Mr. Harrington's time,[24] 318.6 hours of the time of its associate, and 89.7 hours of the time of its paralegal[25] to and incurred $11,579.30 in expenses in the defense of *DeFalco* during the relevant period. There is no dispute as to the expenses. Applying the hourly rates found reasonable above to the time thus expended, adjusting for the small number of additional hours billed at lower rates, and adding the expenses results in the finding that plaintiff is entitled to judgment against defendant in the amount of $168,293.30 plus prejudgment interest at the statutory rate in New York diversity cases of 9 percent. The Court fixes August 1, 1996 as a reasonable intermediate date from which to compute prejudgment interest.[26]

### Conclusion

For the foregoing reasons, plaintiff shall have judgment against defendant in the amount of $168,293.30 plus prejudgment interest at the rate of 9 percent from August 1, 1995 to the date of the judgment. The foregoing constitute the Court's findings of fact and conclusions of law.

SO ORDERED.

---

**24.** Mr. Harrington billed an additional 8 hours, not included in this total, at a rate of $195 per hour.

**25.** It billed an additional 3 hours not included here at a rate of $50 per hour.

**26.** N.Y. CPLR § 5001(c).