78 N.Y.2d 61 (1991)
Linda A. Fitzpatrick, Individually and as Administratrix of The Estate of John J. Fitzpatrick, Jr., Deceased, Plaintiff,
v.
American Honda Motor Co., Inc., et al., Defendants, and Frank Moramarco, Defendant and Third-Party Plaintiff-Appellant. National Casualty Company, Third-Party Defendant-Respondent.
Court of Appeals of the State of New York.
Argued February 13, 1991.
Decided May 7, 1991.
Charles G. Mills, Daren A. Rathkopf and Philip C. Kilian for third-party plaintiff-appellant.
Anthony J. McNulty for third-party defendant-respondent.
Chief Judge WACHTLER and Judges KAYE and BELLACOSA concur with Judge TITONE; Judge ALEXANDER dissents and votes to affirm in a separate opinion in which Judges SIMONS and HANCOCK, JR., concur.
*63 TITONE, J.
It is well established that a liability insurer has a duty to defend its insured in a pending lawsuit if the pleadings allege a covered occurrence, even though facts outside the four corners of those pleadings indicate that the claim may be meritless or not covered (see, e.g., Ruder & Finn v Seaboard Sur. Co., 52 N.Y.2d 663, 669-670). The issue in this appeal is whether the insurer has a duty to defend in the opposite circumstance, i.e., where the pleadings do not allege a covered occurrence but the insurer has actual knowledge of facts demonstrating that the lawsuit does involve such an occurrence. Under these facts, we hold that the insurer cannot use a third party's pleadings as a shield to avoid its contractual duty to defend its insured.
The plaintiff in the main action, Linda Fitzpatrick, sought recovery for the wrongful death of her husband, John Fitzpatrick, who died on October 31, 1985 while operating a three-wheel all-terrain vehicle. The complaint alleged that the vehicle in question was owned by defendant Frank Moramarco and that Moramarco had given Fitzpatrick permission to use it in connection with the performance of certain yardwork and household chores. According to the complaint, codefendant Cherrywood Property Owners Association (CPOA), the owner of the property on which the accident occurred, had retained Moramarco, and Moramarco, acting as CPOA's agent, had in turn hired Fitzpatrick as an "independent contractor."
In fact, Moramarco was an officer, shareholder and director of an independent concern called Cherrywood Landscaping, Inc. (CLI), which had been retained by CPOA to do landscaping work on CPOA's property. The vehicle involved in Fitzpatrick's accident had been purchased by Moramarco on behalf of CLI for use in its landscaping and gardening business. CLI had also purchased a liability insurance policy from National *64 Casualty Co. (National), which indemnified the corporation against having to pay damages for bodily injury and property damage arising out of its business. While the policy was not an "owner's policy" and Moramarco was not a specifically named insured, the terms of the policy included as "insured persons" "any executive officer, director or stockholder [of the named insured (i.e., CLI)] while acting within the scope of his duties as such."
Shortly after Moramarco was served with papers in the main action,[1] he notified National and requested that the insurer provide him with a defense. National, however, refused, stating that the policy it had issued to CLI did not appear to cover the claim against Moramarco. In subsequent correspondence, Moramarco advised the insurer that the vehicle involved in the Fitzpatrick accident was "owned for and * * * used exclusively for landscaping operations" and that the claims asserted against him in the main action all arose out of activities he undertook for CLI, the named insured. The same circumstances were brought to the insurer's attention in a letter from its own agent in which the company was urged to reconsider its prior decision. Nonetheless, National maintained that it was not required to provide a defense because the complaint did not name CLI, and Moramarco, the named defendant, was not insured as an individual.
Moramarco thereafter commenced a third-party action against National seeking payment of his legal fees in the main action, as well as "judgment over" for any judgment entered against him in the main action. National promptly moved, pursuant to CPLR 3211 (a) (1) and (7), to dismiss the third-party complaint. Relying wholly on the absence of allegations in the Fitzpatrick complaint suggesting that the claim against Moramarco arose in connection with his activities as an officer, shareholder or director of the insured CLI, National argued that it had no duty to defend or indemnify Moramarco under the terms of the policy. In response, Moramarco submitted proof to show that, despite the complaint's inaccuracies, the Fitzpatrick claim actually did involve a covered event.
The Supreme Court denied National's dismissal motion, holding that the question of whether its policy covered the *65 Fitzpatrick accident "must await a plenary trial." The Appellate Division, however, reversed and dismissed the third-party complaint. The court held that the allegations in the complaint are the determinative factor in resolving whether the provisions of an insurance policy have been "activated" in a particular action. Since the Fitzpatrick complaint named Moramarco only in his individual capacity and the insured, CLI, was never even mentioned, the Appellate Division concluded that the existing documentary evidence, i.e., the Fitzpatrick complaint and the National policy, was sufficient to warrant dismissal of Moramarco's third-party claim (see, CPLR 3211 [a] [1]). This Court granted Moramarco leave to appeal from the Appellate Division order. We now reverse.
This Court has repeatedly held that an insurer's duty to defend its insured arises whenever the allegations in a complaint state a cause of action that gives rise to the reasonable possibility of recovery under the policy (see, e.g., Technicon Elecs. Corp. v American Home Assur. Co., 74 N.Y.2d 66, 73; Meyers & Sons Corp. v Zurich Am. Ins. Group, 74 N.Y.2d 298, 302; see, Servidone Constr. Corp. v Security Ins. Co., 64 N.Y.2d 419, 424). In the present appeal, National asks this Court to hold that the converse is also true. According to National, the complaint allegations are, in all cases, the sole determining consideration and, consequently, an insurer is relieved of the duty to defend whenever the complaint allegations do not on their face set forth a covered cause of action. However, the position National advocates is neither compelled by our prior case law nor consistent with sound legal principles and policies. Accordingly, we reject it.
The rationale underlying the cases in which the "four corners of the complaint" rule was delineated and applied (see, e.g., Meyers & Sons Corp. v Zurich Am. Ins. Group, supra; International Paper Co. v Continental Cas. Co., 35 N.Y.2d 322; Goldberg v Lumber Mut. Cas. Ins. Co., 297 N.Y. 148), is based on the oft-stated principle that the duty to defend is broader than the duty to indemnify (see, e.g., Ruder & Finn v Seaboard Sur. Co., 52 N.Y.2d 663, 669-670, supra). In other words, as the rule has developed, an insurer may be contractually bound to defend even though it may not ultimately be bound to pay, either because its insured is not factually or legally liable or because the occurrence is later proven to be outside the policy's coverage.
It follows logically from this principle that an insurer's duty *66 to defend is called into play whenever the pleadings allege an act or omission within the policy's coverage. Even where there exist extrinsic facts suggesting that the claim may ultimately prove meritless or outside the policy's coverage, the insurer cannot avoid its commitment to provide a defense, since "[a] complaint subject to defeat because of debatable theories * * * must [nevertheless] be defended by the insured." (International Paper Co. v Continental Cas. Co., supra, at 326.) Accordingly, the courts of this State have refused to permit insurers to look beyond the complaint's allegations to avoid their obligation to defend and have held that the duty to defend exists "[i]f the complaint contains any facts or allegations which bring the claim even potentially within the protection purchased" (Technicon Elecs. Corp. v American Home Assur. Co., supra, at 73). The holdings thus clearly establish that an insurer's duty to defend is at least broad enough to apply when the "four corners of the complaint" suggest the reasonable possibility of coverage.
However, to say that the duty to defend is at least broad enough to apply to actions in which the complaint alleges a covered occurrence is a far cry from saying that the complaint allegations are the sole criteria for measuring the scope of that duty. Indeed, in these circumstances, where the insurer is attempting to shield itself from the responsibility to defend despite its actual knowledge that the lawsuit involves a covered event, wooden application of the "four corners of the complaint" rule would render the duty to defend narrower than the duty to indemnify  clearly an unacceptable result. For that reason, courts and commentators have indicated that the insurer must provide a defense if it has knowledge of facts which potentially bring the claim within the policy's indemnity coverage (see, e.g., Lowenstein Dyes & Cosmetics v Aetna Life & Cas. Co., 524 F Supp 574, 576, affd 742 F.2d 1437; Tennessee Corp. v Hartford Acc. & Indem. Co., 326 F Supp 520, 524, affd 463 F.2d 548; Evan v Employers Mut. Liab. Ins. Co., 391 F Supp 1230, 1231-1232; National Indem. Co. v Flesher, 469 P2d 360, 366 [Alaska]; Fresno Economy Import Used Cars v United States Fid. & Guar. Co., 76 Cal App 3d 272, 278-279, 142 Cal Rptr 681; Mullen v Glens Falls Ins. Co., 73 Cal App 3d 163, 169-170, 140 Cal Rptr 605; Loftin v United States Fire Ins. Co., 106 Ga App 287, 127 SE2d 53; LaRotunda v Royal Globe Ins. Co., 87 Ill App 3d 446, 408 NE2d 928; New Hampshire Ins. Co. v Christy, 200 NW2d 834, 838-839 [Iowa]; Patrons Mut. Ins. Assn. v Harmon, 240 Kan 707, 732 P2d 741; Shepard Mar. Constr. Co. v Maryland Cas. Co., 73 Mich App 62, 250 NW2d 541; *67 Lanoue v Fireman's Fund Am. Ins. Cos., 278 NW2d 49, 53 [Minn]; Iowa Natl. Mut. Ins. Co. v Universal Underwriters Ins. Co., 276 Minn 362, 150 NW2d 233; Marshall's U.S. Auto Supply v Maryland Cas. Co., 354 Mo 455, 189 SW2d 529; Commercial Pipe & Supply Corp. v Allstate Ins. Co., 36 AD2d 412, affd 30 N.Y.2d 619; Sucrest Corp. v Fisher Governor Co., 83 Misc 2d 394, 402-403; Ostrager & Newman, Insurance Coverage Disputes § 5.02 [a], at 122-123 [3d ed]; 7C Appleman, Insurance Law and Practice § 4683, at 56 [Berdal ed]; id., § 4684.01, at 96-97; at 17 [1990 Pocket Part]; but see, Sussman v American Sur. Co., 345 F.2d 679; Massachusetts Turnpike Auth. v Perini Corp., 349 Mass 448, 208 NE2d 807; Allstate Ins. Co. v Coriell, 30 Ohio Misc 67, 284 NE2d 202 [criticized in 7C Appleman, op. cit., § 4684.01, at 92, n 13]).
We agree with these authorities and hold that, rather than mechanically applying only the "four corners of the complaint" rule in these circumstances, the sounder approach is to require the insurer to provide a defense when it has actual knowledge of facts establishing a reasonable possibility of coverage (see generally, 7C Appleman, op. cit., § 4684.01, at 95).[2] This holding fits easily and appropriately within the existing rules governing coverage disputes (see, Commercial Pipe & Supply Corp. v Allstate Ins. Co., supra; Sucrest Corp. v Fisher Governor Co., supra), which certainly do not require us to extend the "four corners of the complaint" rule to a *68 situation such as this one, where it has not been applied before and, in fact, has no apparent value. Although it has been argued that the "four corners of the complaint" rule has the advantage of certainty (see, dissenting opn, at 73), there is no reason to believe that the rule we adopt here will engender any more litigation.
The conclusion we reach here flows naturally from the fact that the duty to defend derives, in the first instance, not from the complaint drafted by a third party, but rather from the insurer's own contract with the insured (see, e.g., 7C Appleman, op. cit., § 4682, at 27 [and authorities cited therein]). While the allegations in the complaint may provide the significant and usual touchstone for determining whether the insurer is contractually bound to provide a defense, the contract itself must always remain a primary point of reference (see also, Technicon Elecs. Corp. v American Home Assur. Co., supra, at 73 [duty to defend arises from complaint and insurance contract]). Indeed, a contrary rule making the terms of the complaint controlling "would allow the insurer to construct a formal fortress of the third party's pleadings * * * thereby successfully ignoring true but unpleaded facts within its knowledge that require it * * * to conduct the * * * insured's defense" (Associated Indem. Co. v Insurance Co., 68 Ill App 3d 807, 816-817, 386 NE2d 529, 536). Further, an insured's right to a defense should not depend solely on the allegations a third party chooses to put in the complaint. This is particularly so because the drafter of the pleading may be unaware of the true underlying facts or the nuances that may affect the defendant's coverage and it might not be in the insured's (or the insurer's) interest to reveal them.[3]
The principle that an insurer may not rely on the pleadings to narrow the scope of its duty to defend also finds support in the practical realities that prevail under modern pleading rules. As one commentator has observed, "considering the plasticity of modern pleadings, in many cases no one can determine whether the third party suit does or does not fall within the indemnification coverage of the policy until the *69 suit itself is resolved" (7C Appleman, op. cit., § 4684, at 83). This observation is particularly apt in the context of New York's liberal pleading rules, which permit the pleadings to be amended to conform to the proof at any time, provided that no prejudice is shown (see, CPLR 3025 [a]).
The facts in this case  where the complaint on its face did not state a covered claim but the underlying facts made known to the insurer by its insured unquestionably involved a covered event  present a clear example. The insurer here refused to defend Frank Moramarco because he was sued, albeit mistakenly, as an employee of CPOA and the owner of the injury-causing vehicle. Had the complaint correctly identified Moramarco as an officer and/or shareholder of the insured CLI, he would have unquestionably been covered for this lawsuit, since the policy provided that "any executive officer, director or stockholder [of CLI] while acting within the scope of his duties as such" was an additional "insured person" under the policy. Further, the insurer promised to "defend any suit against the insured seeking damages on account of * * * bodily injury or property damage" arising out of CLI's landscaping and gardening business  a condition plainly satisfied here. To deny Moramarco an insurance-company sponsored defense under these circumstances merely because the attorney for the plaintiff in the main action accidentally mischaracterized Moramarco's role would be to afford the insurer an undeserved windfall at the expense of its insured.
Indeed, relieving the insurer of its duty to defend is particularly imprudent and counterproductive where, as here, the inaccuracies in the plaintiff's pleadings are likely to become apparent when the true facts are developed on the record and the role of the insured in the incident is fully exposed.[4] At *70 that point, the trial court could well grant a request by the plaintiff to conform the pleadings to the proof (see, CPLR 3025 [c]), in which event the insurer's core policy obligation to defend Frank Moramarco as an additional insured would unquestionably be triggered. Moramarco should not be required to wait until that point is reached before obtaining an insurance-company sponsored defense, since a "provision for defense of suits is useless and meaningless unless it is offered when the suit arises" (7C Appleman, op. cit., § 4684, at 83).
In sum, application of the "four corners of the complaint" rule in these circumstances is not required by our prior cases and is not even supported by the rationale usually offered in support of the rule. Further, invocation of the rule here and in analogous cases leads to an unjust result, since it exalts form over substance and denies an insured party the benefit of the "litigation insurance" for which it has paid. These factors militate in favor of a rule requiring the insurer to provide a defense where, notwithstanding the complaint allegations, underlying facts made known to the insurer create a "reasonable possibility that the insured may be held liable for some act or omission covered by the policy" (Meyers & Sons Corp. v Zurich Am. Ins. Group, supra, at 302). We therefore hold that National cannot ignore the facts made known to it by its insured and rely instead on the Fitzpatrick complaint alone to assess its duty to defend Moramarco. The third-party complaint by Moramarco seeking payment of his attorney's fees and indemnification in the event that a judgment was entered against him should not have been dismissed.[5]
Accordingly, the order of the Appellate Division should be reversed, with costs, and the motion to dismiss the third-party complaint denied.
ALEXANDER, J. (dissenting).
Because the majority today discards a rule of long standing and, in my view, does so without justification and under circumstances not warranting such a drastic departure from settled precedent, I respectfully dissent.
It is axiomatic that the obligations of a liability insurance *71 carrier to its insured are governed by the terms of the contract of insurance between them and it is only by examining the terms and conditions of that policy that those obligations can be determined with certainty. Obviously, where an insured has been found liable to a third party in respect to a risk covered by the policy, the carrier is obligated to indemnify its insured. Additionally, where the policy so provides, the carrier is obligated to defend its insured against claims asserting risks covered by the policy. Indeed the rule is firmly established that the duty to defend is broader than the duty to indemnify (Ruder & Finn v Seaboard Sur. Co., 52 N.Y.2d 663, 669-670; Servidone Constr. Corp. v Security Ins. Co., 64 N.Y.2d 419, 424). When the policy contains the insurer's promise to defend the insured, the "liability insurance" is in fact "litigation insurance" as well (Seaboard Sur. Co. v Gillette Co., 64 N.Y.2d 304; International Paper Co. v Continental Cas. Co., 35 N.Y.2d 322, 326).
However, this Court has repeatedly held, in a long line of cases, unbroken until now, that the duty of a liability insurer to defend an action brought against an insured is determined by the allegations in the complaint pursuant to which the insured's liability is asserted (see, Meyers & Sons Corp. v Zurich Am. Ins. Group, 74 N.Y.2d 298; Technicon Elecs. Corp. v American Home Assur. Co., 74 N.Y.2d 66; Servidone Constr. Corp. v Security Ins. Co., 64 N.Y.2d 419, supra; Seaboard Sur. Co. v Gillette Co., 64 N.Y.2d 304, supra; International Paper Co. v Continental Cas. Co., 35 N.Y.2d 322, supra; Goldberg v Lumber Mut. Cas. Ins. Co., 297 N.Y. 148). "If the facts alleged [in the complaint] raise a reasonable possibility that the insured may be held liable for some act or omission covered by the policy, then the insurer must defend" (Meyers & Sons Corp. v Zurich Am. Ins. Group, 74 N.Y.2d 298, 302, supra).
In determining whether there is a duty to defend however, the Court must compare the allegations of the complaint with the terms of the policy (see, Lionel Freedman, Inc. v Glens Falls Ins. Co., 27 N.Y.2d 364, 367). If those allegations, on their face, are within the compass of the risk covered by the insurance policy, the insurer is obligated to assume the defense of the action[1] (Goldberg v Lumber Mut. Cas. Ins. Co., supra; *72 International Paper Co. v Continental Cas. Co., 35 N.Y.2d 322, supra). Conversely, it logically follows, that if that comparison demonstrates that those allegations are not within the coverage of the policy, the insurance company's duty to defend does not arise (see, Goldberg v Lumber Mut. Cas. Ins. Co., 297 N.Y. 148). Indeed where it can be determined "that no basis for recovery within the coverage of the policy is stated in the complaint * * * defendant's refusal to defend [may be sustained]." (Lionel Freedman, Inc. v Glens Falls Ins. Co., 27 N.Y.2d 364, 368, rearg denied 28 N.Y.2d 859, supra; Sucrest Corp. v Fisher Governor Co., 83 Misc 2d 394, 400.)
The underlying negligence complaint of Linda A. Fitzpatrick seeks to recover damages for the wrongful death of her husband John Fitzpatrick which allegedly occurred while he was operating a 1985 Honda ATV all-terrain vehicle. The complaint alleges that Cherrywood Property Owners Association owned the premises where the accident occurred, that the codefendant Frank Moramarco is an employee, agent and/or servant of Cherrywood Property Owners Association, that the offending vehicle was owned by Moramarco and was being operated with the permission and consent of Moramarco and Cherrywood Property Owners Association. The complaint alleges further that Moramarco and "Cherrywood" were negligent and careless in the ownership, operation, maintenance of the premises owned by "Cherrywood" and the ownership, maintenance, use, supervision and control of the 1985 Honda ATV.
The National Casualty policy at issue here, was issued to Cherrywood Landscaping, Inc. and names that entity as the insured. The policy also provides that "any executive officer, director or stockholder (of the named insured) while acting within the scope of his duties as such", is also insured.
A comparison of the allegations of the Fitzpatrick complaint with the provisions of the National Casualty policy demonstrates that the named defendant, Cherrywood Property Owners Association is not an insured under the policy. The insured is Cherrywood Landscaping, Inc.  a completely different corporation. Frank Moramarco is a covered person under this *73 policy only insofar as he is acting within the scope of his activities as an "executive officer, director or stockholder" of Cherrywood Landscaping. The Fitzpatrick complaint alleges Moramarco's liability individually and as an officer, director, agent and/or employee of Cherrywood Property Owners Association. Under settled principles of law therefore since the insured under the policy is not a party to this lawsuit, the event alleged in the complaint is not a covered event under the policy and the carrier's duty to defend does not arise.
Deviating from these settled rules, the majority concludes that notwithstanding that the Fitzpatrick complaint, when compared to the terms of the policy, fails to demonstrate the existence of a covered event, "the insurer must provide a defense if it has knowledge of facts which potentially bring the claim within the policy's indemnity coverage" (majority opn, at 66). It should be noted that to support this proposition the majority relies upon cases from other jurisdictions which impose an obligation upon the insurance company to investigate the claim before declining to defend  a requirement that this Court has never before imposed.[2]
The rule which until now has prevailed in this jurisdiction provides certainty in this area of law and is easily applied. By changing the rule, the majority has supplanted certainty with uncertainty; an insurer now will be less clear as to what, if any, investigation it must make into a demand to defend and when it is permissible to decline representation. Concomitantly, the new rule presumably will increase collateral proceedings such as this, to determine whether an insurer in fact has a duty to defend. These collateral proceedings will be made more complicated because courts now will be obligated to look beyond the allegations in the complaint to discover the "actual" facts, or at a minimum whether the insurer "knew" or perhaps even "should have known" of such "actual facts". The rule could also place the insured in the position of *74 dictating the theory of the action, conceivably requiring the carrier to defend a claim the plaintiff has no intention of asserting merely because allegedly there are "facts" which support such a claim.[3]
The majority posits this new rule as being corollary to the established rule that where the allegations of the complaint state a claim within the coverage of the policy, the "insurers [may not] look beyond the complaint's allegations to avoid their obligation to defend" (majority opn, at 66). The fact is, however, that under the rule cited by the majority, "the insurance company's duty to defend came into being when it appeared from the allegations in the negligence action that the injury was within the coverage of the policy, and it persisted despite the advice [from the insured] pointing [to] a contrary conclusion" (Goldberg v Lumber Mut. Cas. Ins. Co., 297 N.Y. 148, 154, supra [emphasis added]).
Thus it is clear that under that established rule it is the allegations of the complaint, compared to the policy provisions, that trigger the duty to defend, a duty which persists notwithstanding that liability may ultimately be shown not to exist. This rule gives certainty to the inception of the carrier's duty to defend and is entirely consistent with its obligations under its policy. No satisfactory reason for altering this rule is shown to exist here; thus the order granting summary judgment to the third-party defendant National Casualty Co. should be affirmed.[4]
Order reversed, etc.
NOTES
[1] Although Moramarco was a named defendant from the outset, the first papers he received were those of codefendant Honda of Mineola, which interposed a cross claim against him. He was not actually served by plaintiff until some 2½ months later.
[2] Contrary to the dissenters' assertion (dissenting opn, at 73), the above-cited authorities do not uniformly impose on the insurer an obligation to investigate; rather, their holdings on this point are mixed (compare, Tennessee Corp. v Hartford Acc. & Indem. Co., supra; Evan v Employers Mut. Liab. Ins. Co., supra; National Indem. Co. v Flesher, supra; Fresno Economy Import Used Cars v United States Fid. & Guar. Co., supra; Mullen v Glens Falls Ins. Co., supra; Loftin v United States Fire Ins. Co., supra; Patrons Mut. Ins. Assn. v Harmon, supra; Marshall's U.S. Auto Supply v Maryland Cas. Co., supra [imposing some duty to discover "reasonably ascertainable" facts], with Lowenstein Dyes & Cosmetics v Aetna Life & Cas. Co., supra [construing New York law]; LaRotunda v Royal Globe Ins. Co., supra; New Hampshire Ins. Co. v Christy, supra; Shepard Mar. Constr. Co. v Maryland Cas. Co., supra; Lanoue v Fireman's Fund Am. Ins. Cos., supra; Commercial Pipe & Supply Corp. v Allstate Ins. Co., supra; Sucrest Corp. v Fisher Governor Co., supra [insurer's duty to defend depends on insurer's actual knowledge]). In any event, the duty we recognize here, i.e., the duty to defend when the facts known to the insurer indicate coverage, does not depend upon, or even imply, a corollary duty to investigate. Indeed, there is nothing in this case, where the insurer was actually notified of the salient facts by both its insured and its own agent, that requires us to create a duty to investigate where none previously existed.
[3] The dissenters' suggestion that, as a result of our ruling, the insured defendant may now be "in the position of dictating the theory of the action" is perplexing (see, dissenting opn, at 73-74). Certainly, it is unlikely that a plaintiff would voluntarily choose an uncovered theory of liability over one that is supported by the facts and could lead to a judgment that is covered by insurance. Accordingly, it is difficult to foresee when a carrier might be called upon "to defend a claim the plaintiff has no intention of asserting."
[4] Indeed, the parties' submissions to this Court indicate that after the trial court's order denying National's dismissal motion was entered, CLI was added as a party defendant on the complaint and the insurer has undertaken to defend that entity. However, we have neither seen nor been advised of the contents of the amended complaint. Thus, the dissenters' assertion that the complaint in the main action now "include[s] the `actual facts' regarding ownership and control of the [subject vehicle]" (see, dissenting opn, at 74, n 4) rests on nothing more than sheer speculation. Further, there is no basis for inferring that the "four corners of the complaint" rule has "worked well" in this case. Although CLI is now represented, Moramarco has been forced to retain and pay his own attorney and, as far as may be determined from the present submissions, has yet to be offered relief by the insurer. Manifestly, that result was not within Moramarco's reasonable expectation when he purchased a policy which included CLI's officers and directors as "additional insureds" under precisely these circumstances.
[5] When National moved to dismiss the third-party complaint, Moramarco opposed the motion but did not cross-move for an order granting him relief on his claim for an insurance-company sponsored defense. Accordingly, in this appeal we are limited to determining whether the "documentary evidence" submitted by National, i.e., the Fitzpatrick complaint and CLI's insurance policy, is alone sufficient to defeat that claim.
[1] Thus far from being a woodenly applied "`four corners of the complaint rule'" (majority opn, at 66) this comparison requirement serves to give certainty and definiteness to the insurer's duty to defend. Indeed the proposition advanced by the majority that the "allegations in the complaint may provide the significant and usual touchstone for determining whether the insurer is contractually bound to provide a defense" (majority opn, at 66) abandons any truly objective standard by which to determine whether a duty to defend arises under the contract of insurance, and expresses the majority's intent to substitute an uncertain subjective standard.
[2] Notably, the only two New York cases cited by the majority (Commercial Pipe & Supply Corp. v Allstate Ins. Co., 36 AD2d 412, affd 30 N.Y.2d 619; and Sucrest Corp. v Fisher, 83 Misc 2d 394) reaffirm and rely upon the rule now rejected by the majority. Indeed in Sucrest, the court relied upon the allegations of the main complaint, in conjunction with those of the supplemental complaint in determining the existence of a duty to defend (83 Misc 2d, at 403; see also, Chatham Corp. v Argonaut Ins. Co., 70 Misc 2d 1028). In Commercial Pipe & Supply Corp. (supra), unlike here, the insured was a properly served defendant and the allegations of the complaint potentially brought the case within the coverage of the policy.
[3] Notwithstanding the majority's "perplexity" (majority opn, at 68, n 3) it is clear that although apparently aware of the "true facts", rather than promptly amending the complaint in the underlying action, the attorney for Linda Fitzpatrick submitted an affidavit to Supreme Court opposing National Casualty's motion to dismiss, thus evincing no apparent interest in asserting a claim against Cherrywood Landscaping.
[4] Indeed the majority's new rule makes little sense in this area of the law where the court has continually sought certainty. The settled rule has worked well as illustrated by this very case. As the majority acknowledges (see, at 69, n 4), it appears that the plaintiff in the underlying personal injury action belatedly has amended the complaint to include the insured Cherrywood Landscaping, Inc., as a party defendant and to include the "actual facts" regarding ownership and control of the ATV. If the majority's suggestion that there is no basis for so concluding that the "actual facts" have now been alleged, is accepted, one can only wonder why the complaint was amended, a cross claim asserted by Cherrywood Property Owners Association and a defense assumed by National Casualty. These developments demonstrate beyond peradventure the complete lack of any necessity to revise our long-standing rule in order to resolve this case.