**PARK PLACE ENTERTAINMENT CORPORATION Plaintiff,**

v.

**TRANSCONTINENTAL INSURANCE COMPANY; Agricultural Insurance Company; American:National Fire Insurance Company; Athena Assurance Company; Indemnity Insurance Company of North America; Liberty Mutual Insurance Company; Markel American Insurance Company; Na-** tional Surety Corporation; National Union Fire Insurance Company of Pittsburgh, PA; Ohio Casualty Insurance Company; Westchester Fire Insurance Company; and Westport Insurance Corporation, Defendants.

No. 01 Civ. 6546 (RLC).

United States District Court, S.D. New York.

Oct. 2, 2002.

& Brennan, LLP, New York, Michael Paul Kandler, Of Counsel, Luce Forward Hamilton & Scripps, New York, Ira S. Bergman, Of Counsel, Lustig & Brown, New York, Sheri N. Robinson, Of Counsel, Kaufman, Borgeest & Ryan, New York, Ariel Michael Furman, Of Counsel, Picillo Caruso, Nutley, NJ, Steven A. Weiner, Of Counsel, Caron, Constants & Wilson, Rutherford, NJ, Darrel M. Seife, Of Counsel, Lester, Schwab, Katz & Dwyer, L.L.P., New York, Eric A. Portuguese, Of Counsel, for Defendants.

OPINION

ROBERT L. CARTER, District Judge.

Plaintiff Park Place Entertainment Corporation ("Park Place") commenced this third party action to obtain a judgment declaring that defendant insurers are obligated to defend and indemnify Park Place in three lawsuits. In addition to declaratory relief, Park Place seeks compensatory and punitive damages for breach of contract and bad faith failure to defend and indemnify. Defendants now move for summary judgment pursuant to Rule 56, F.R. Civ. P., claiming that there is no duty to defend or indemnify Park Place because the suits against Park Place fall within exclusions of the policies at issue.

BACKGROUND

Park Place was sued in three underlying actions: *President R.C.—St. Regis Management Co. v. Park Place Entertainment Corp.* ("President"), *Catskill Development, L.L.C. v. Park Place Entertainment Corp.* ("Catskill"), and *Native American Management Corp. v Park Place Entertainment Corp.* ("NAMC"). Complaints in the three suits asserted that Park Place schemed to gain control of the gaming industry in New York State through a campaign of fraud, intentional tortious interference with contract, bad faith, and

Sills Cummis Radin Tischman, Epstein & Gross, P.C., New York, Kenneth Hayes, Steven S. Radin, Of Counsel, for Plaintiff.

Ford, Marrin, Esposito, Witmeyer & Gleser, L.L.P., New York, Stuart C. Levene, Of Counsel, L'Abbate, Balkan, Colavita & Contini, Garden City, Gary Petropoulos, Of Counsel, Callan, Koster, Brady

defamation. The goal of the alleged scheme was to destroy Park Place's competitors' relationships with Native American tribes and their ability to compete in the New York gaming industry.

Relevant to this case are allegations of defamation in each of the complaints. Specifically, the President complaint alleges in part that Park Place executives, in furtherance of a "fraudulent scheme," "maliciously" disparaged the plaintiffs, and "[t]hese statements were false and defamatory and were knowingly false and defamatory when made." (President Compl. ¶¶ 1, 105, 106.) The Catskill complaint alleges in part that Park Place executives "intentionally and unfairly maligned the reputations and integrity" of the plaintiffs. (Catskill Compl. ¶ 103.) The NAMC complaint alleges in part that Park Place executives made statements about NAMC that were "false and defamatory and knowingly false and defamatory" at a February 15, 2000 meeting. (NAMC Compl. ¶ 194.)

Park Place's primary and umbrella insurance policies, which were issued by Transcontinental Insurance Co.,[1] provide for a defense as well as coverage for "personal and advertising injury" (defined as injury arising out of torts such as false arrest, malicious prosecution, wrongful eviction, invasion of privacy, and most important to this case, "[o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services"). (Levene Aff. Exh. F, Exh. G.) The policies exclude coverage, however, for personal and advertising injury that arises out of "oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity." *Id.*

Additional excess policies taken out by Park Place provide coverage for loss due to personal injury arising out of defamation, subject to the same exclusions as the underlying umbrella policies. (Am. Compl. ¶ 33.) Two of the excess policies (issued by National Fire Insurance Company and Indemnity Insurance Company of North America) also provide for a defense in the event that underlying Transcontinental policy limits are exhausted.

## DISCUSSION

### I. Choice of Law

Before considering the merits, the court must decide which state's law governs the interpretation of the policies. Park Place argues that Nevada law governs, while defendant insurers argue that New York law governs.

 A federal court sitting in diversity must apply the choice of law rules of the forum state, in this case, New York. *Tri–State Employment Servs., Inc. v. Mountbatten Sur. Co., Inc.*, 295 F.3d 256, 260 (2d Cir.2002) (citing *Klaxon Co. v. Stentor Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). The first step in a case presenting a potential choice of law issue is to determine whether there is a true conflict between the laws of the jurisdictions involved. *In re Allstate Ins. Co.*, 81 N.Y.2d 219, 597 N.Y.S.2d 904, 613 N.E.2d 936, 936 (1993). If the party advocating a choice of law analysis fails to demonstrate an actual conflict between New York and another state's laws, no choice of law analysis need be undertaken. *Bass v. World Wrestling Fed'n Entm't, Inc.*, 129 F.Supp.2d 491, 504 (E.D.N.Y.2001) (citing *Portanova v. Trump Taj Mahal Assocs.*, 270 A.D.2d 757, 759–60, 704 N.Y.S.2d 380,

---

**1.** National Union Fire Insurance Company also issued an umbrella policy to Park Place, the relevant portions of which are substantially similar to the Transcontinental umbrella policy.

*leave denied,* 95 N.Y.2d 765, 716 N.Y.S.2d 39, 739 N.E.2d 295 (2000)).

There are no Nevada state court cases addressing an insurer's duty to defend. In this situation, the court must act as a New York state court would in predicting how Nevada courts would rule as to the contours of the duty to defend. *See Rogers v. Grimaldi,* 875 F.2d 994, 1002 (2d Cir.1989). ("This two-step process of divining the law of the foreign state...appears to be a consequence both of *Klaxon* and of the fundamental tenet of diversity jurisdiction...that the federal court is only another court of the State.") (internal quotation and citations omitted). The Second Circuit in *Rogers* tackled this "uncertain task" by deciding that

> New York courts would, as a matter of substantive interpretation, presume that the unsettled common law of another state would resemble New York's but that they would examine the law of the other jurisdiction and that of other states, as well as their own, in making an ultimate determination as to the likely future content of the other jurisdiction's law.

*Id.* at 1003. Accordingly, in this case the court will presume that Nevada law will resemble New York law, but will also examine the law of Nevada to determine the likely future content of that state's law.

■ Under New York law, the duty to defend is "exceedingly broad." *Continental Cas. Co. v. Rapid–American Corp.,* 80 N.Y.2d 640, 593 N.Y.S.2d 966, 609 N.E.2d 506, 509 (N.Y.1993). This duty is broader than the insurer's obligation to indemnify. *See id.* ("An insurer must defend whenever the four corners of the complaint suggest—or the insurer has actual knowledge of facts establishing—a reasonable possibility of coverage.") (citing *Fitzpatrick v. American Honda Motor Co.,* 78 N.Y.2d 61, 571 N.Y.S.2d 672, 575 N.E.2d 90, 90 (1991)). The insurer must provide a de-

fense if it has knowledge of facts that potentially bring the claim within the policy's indemnity coverage. *Fitzpatrick,* 571 N.Y.S.2d 672, 575 N.E.2d at 92.

■ Nevada law, as predicted by the federal district court sitting in that jurisdiction, is similar to that of New York. *See, e.g., Associated Aviation Underwriters, Inc. v. Vegas Jet, L.L.C.,* 106 F.Supp.2d 1051 (D.Nev.2000); *Insurance Co. of N. Am. v. Hilton Hotels U.S.A., Inc.,* 908 F.Supp. 809 (D.Nev.1995); *Rockwood Ins. Co. v. Federated Capital Corp.,* 694 F.Supp. 772 (D.Nev.1988). Applying Nevada law, the district court has stated that "[t]he authorities unquestionably support the proposition that the duty to defend is much broader than the duty to indemnify." *Rockwood,* 694 F.Supp. at 776. Pursuant to this duty, an insurer must defend any suit brought against its insured that potentially seeks damages within the coverage of the policy. *Id.* Further, "[i]f facts are alleged which, if proven, would give rise to the duty to indemnify, then the insurer must defend. It is immaterial whether the claim asserted is false, fraudulent or unprovable. The potentiality of covered liability is the test." *Id.* (citing *Continental Cas. Co. v. City of Richmond,* 763 F.2d 1076 (9th Cir.1985)). Hence, it appears likely that Nevada courts would employ a "potentiality" test similar to that used by New York to determine a defense obligation.

Regarding the duty to indemnify, the laws of New York and Nevada also appear similar. *Compare Associated Aviation Underwriters,* 106 F.Supp.2d at 1053 ("The duty to indemnify...will arise only in the event of final placement of covered, non-excluded liability upon the insured through judgment or settlement.") *with Frontier Insulation Contractors, Inc. v. Merchants Mut. Ins. Co.,* 91 N.Y.2d 169, 667 N.Y.S.2d 982, 690 N.E.2d 866, 870 (1997) ("the duty

to pay is determined by the actual basis for the insured's liability to a third person. Thus, we decline to pass on the question of defendants' duty to indemnify at this early juncture, which predates any ultimate determination of the insurers' liability.") (internal citations omitted).

Because New York law in this area appears similar in all material respects to the law of Nevada as predicted by the federal courts sitting in that jurisdiction, the court holds that a New York state court would find no actual conflict of law, and would therefore apply New York law to the instant dispute. This is the task the court will now undertake.

## II. Summary Judgment Standard

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56, F.R. Civ. P. In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). Summary judgment is improper if there is any evidence in the record from any source from which a rea-

sonable inference could be drawn in favor of the nonmoving party. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir.1994). "In considering the motion, the court's responsibility is not to resolve disputed issues of fact but to assess whether there are factual issues to be tried." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986).

## III. Duty To Defend

As mentioned above, under New York law an insurance company's duty to defend is distinct from, and broader than, its duty to indemnify. *Continental Cas. Co.*, 593 N.Y.S.2d 966, 609 N.E.2d at 509. An insurer must defend whenever the allegations of the pleadings suggest, or when the insurer has knowledge of facts establishing a reasonable possibility of coverage. *Id.* (citing *Fitzpatrick*, 571 N.Y.S.2d 672, 575 N.E.2d at 92–93).[2] *See also George Muhlstock & Co. v. American Home Assurance Co.*, 502 N.Y.S.2d 174, 178, 117 A.D.2d 117, 123 (1st Dept.1986) ("[t]he duty to defend arises not from the probability of recovery, but from its possibility, no matter how remote. Any doubt as to whether allegations state a claim covered by the policy must be resolved in favor of the insured as against the insurer."). According to the Court of Appeals, to be relieved of its duty to defend on the basis of a policy exclusion the insurer bears the "heavy burden" of demonstrating that "the allegations of the complaint cast the pleadings wholly within that exclusion, that the

**2.** In *Fitzpatrick,* 571 N.Y.S.2d 672, 575 N.E.2d at 92–94, the Court of Appeals broadened protection for insureds by holding that courts are to look beyond the four corners of the complaint to determine whether there is any potentially covered occurrence. In that case the pleadings did not allege a covered occurrence but the insurer had knowledge of facts demonstrating that the lawsuit did involve such an occurrence. The court held that there was a duty to defend. According to

the Court of Appeals, an insurer cannot use a third party's pleadings as a "formal fortress" to avoid its contractual duty to defend its insured. Where the underlying complaint does not allege a covered occurrence but the insurer has actual knowledge that the action involves a covered event, "wooden application of the 'four corners of the complaint' rule would render the duty to defend narrower than the duty to indemnify—clearly an unacceptable result."

exclusion is subject to no other reasonable interpretation, and that there is no possible factual or legal basis upon which the insurer may eventually be held obligated to indemnify the insured under any policy provision." *Frontier,* 667 N.Y.S.2d 982, 690 N.E.2d at 868–69 (citations omitted).[3]

The complaints in each of the three underlying cases appear to exclusively allege intentional and/or knowing defamation. If the duty to defend were based solely upon the allegations of the complaint itself, the insurers would probably be relieved of the duty to defend in this case. *See, e.g., Shapiro v. Glens Falls Ins. Co.,* 39 N.Y.2d 204, 383 N.Y.S.2d 263, 347 N.E.2d 624 (1976) (a pre-*Fitzpatrick* case holding that an insurer had no duty to defend where the complaint alleged knowingly defamatory speech spoken willfully with the intent to injure, and the policy excluded defamation caused intentionally by or at the direction of the insured). In *Fitzpatrick,* however, "wooden application of the four corners rule" was rejected—that case held that an insurer is required to provide a defense when it has actual knowledge of facts establishing a reasonable possibility of coverage and that an insurer "cannot ignore the facts made known to it by its insured." *Id.* at 92–95. The Court of Appeals reasoned,

> an insured's right to a defense should not depend solely on allegations a third party chooses to put in the complaint. This is particularly so because the drafter of the pleading may be unaware of the true underlying facts or the nuances that may affect the defendant's coverage and it might not be in the insured's (or the insurer's) interest to reveal them. The principle that an *insurer* may not rely on the pleadings to narrow the scope of its duty to defend also finds

support in the practical realities that prevail under modern pleading rules. As one commentator has observed, 'considering the plasticity of modern pleadings, in many cases no one can determine whether the third party suit does or does not fall within the indemnification coverage of the policy until the suit itself is resolved.' This observation is particularly apt in the context of New York's liberal pleading rules, which permit the pleadings to be amended to conform to the proof *at any time,* provided that no prejudice is shown.

*Id.* at 94 (footnote and internal citations omitted).

◼ In this case, defendant insurers do have actual knowledge of facts establishing a reasonable possibility of coverage: a sworn affidavit of Clive Cummis, an Executive Vice President of Park Place, who was one of the two persons alleged to have made defamatory statements in the underlying actions. In addition to denying the allegations, Cummis specifically stated in his declaration that neither he nor Arthur Goldberg ever made any knowingly false statements about the plaintiffs in the underlying suits.

The defendants would like the court to dismiss Cummis's "self-serving" affidavit as adding "nothing to the analysis." (Transcontintental's Rep. Mem. Supp. Summ. J. at 2.) The court cannot do this because the affidavit raises a reasonable possibility of a jury finding defamation without knowledge of falsity, raising a duty to indemnify. *See Spielfogel v. North River Insurance Co.,* 148 A.D.2d 696, 539 N.Y.S.2d 444 (2d Dept.1989) (holding that there was a duty to defend where sworn deposition testimony of the plaintiff indicated that his acts and their consequences

---

3. Where one claim falls within the indemnity coverage of a policy, the insurer must defend the entire action. *See Ruder & Finn, Inc. v.* *Seaboard Sur. Co.,* 52 N.Y.2d 663, 439 N.Y.S.2d 858, 422 N.E.2d 518, 521 (1981).

were unintended, and if so proven would have been within the policy coverage provided by the defendant); *Simply Lite Food Corp. v. Aetna Cas. & Sur. Co. of America,* 666 N.Y.S.2d 714, 245 A.D.2d 500 (2d Dept.1997) (listing insured's sworn denial of knowledge of falsity as one element that provided an insurer with actual knowledge of facts establishing a possibility of coverage and therefore a duty to defend). Here, Cummis and Goldberg's knowledge at the time the statements were allegedly made presents a triable factual issue, which requires a denial of defendant's motion for summary judgment.

Even if the affidavit did not exist, based on the holdings of *Fitzpatrick* and *Frontier* there could still be a duty to defend in this case. The burden on the insurers here is a heavy one: they must demonstrate that there is no possible basis upon which the insurer may eventually be held obligated to indemnify the insured under any policy provision. *Frontier,* 667 N.Y.S.2d 982, 690 N.E.2d at 868–69 (citations omitted). *See also Seaboard Sur. Co. v. Gillette Co.,* 64 N.Y.2d 304, 486 N.Y.S.2d 873, 476 N.E.2d 272, 276 (1984) (denying insurer's motion for summary judgment and stating "[a] declaration that there is no obligation to defend could now properly be made only if it could be concluded as a matter of law that there is no possible factual or legal basis on which [the insurer] might eventually be held to be obligated to indemnify [the insured] under any provision of the insurance policy." (internal quotation omitted)).

■ Here, the plaintiffs in the underlying suits allege intentional and/or knowing defamation in their complaints, but they need not prove intent or knowledge to prevail on a claim of defamation, as New York courts recognize defamation per se causes of action, and also defamation where only gross irresponsibility need be shown. If this court were to hold as a matter of law that there is no duty to defend, and then one or more plaintiffs were to prevail in their defamation claims without proving knowledge, then this could lead to precisely the "unacceptable result" that the *Fitzpatrick* court feared: that the duty to defend would be narrower than the duty to indemnify. *Fitzpatrick,* 571 N.Y.S.2d 672, 575 N.E.2d at 92. *See also Codelia v. Chicago Ins. Co.,* 1999 WL 1029729 (S.D.N.Y.1999) (Koeltl, J.) (holding that there was a duty to defend where intent was not a necessary element of the claim, and the insured could therefore be held liable without proof of intent). *But see Massena v. Healthcare Underwriters Mut. Ins. Co.,* 281 A.D.2d 107, 724 N.Y.S.2d 107 (3d Dept.2001) (holding that there was no duty to defend a defamation action where the underlying claim alleged knowledge of falsity and no facts in the record established otherwise).[4]

In sum, because the court cannot conclude as a matter of law that there is no possible factual or legal basis on which the insurers might eventually be held to be obligated to indemnify Park Place, defendants' motion for summary judgment with respect to its duty to defend is denied.

## IV. Duty To Indemnify

■ As mentioned above, under New York law, the duty to pay is determined by the actual basis for the insured's liability to a third person. *Frontier,* 667 N.Y.S.2d 982, 690 N.E.2d at 870 (citing *Servidone*

---

4. It is unlikely that the plaintiffs in the underlying suit intended to limit their claims to knowing defamation, when proving knowledge of falsity is not essential to a defamation claim. Rather, allegations of malice, intent, and knowledge were more likely intended as a pitch for punitive damages. In fact, NAMC argued in response to Park Place's 12(b)(6) motion that the alleged statements made by Arthur Goldberg were slanderous per se.

*Constr. Corp. v. Security Ins. Co.*, 64 N.Y.2d 419, 488 N.Y.S.2d 139, 477 N.E.2d 441, 444 (1985)). In the *Catskill* action, summary judgment was entered in Park Place's favor, so the indemnification issue is moot.[5] *See Catskill Dev., L.L.C. v. Park Place Entmt. Corp.*, 217 F.Supp.2d 423 (S.D.N.Y.2002) (McMahon, J.). The *President* suit is still in progress, so any decision as to indemnity would clearly be premature at this juncture, as the actual basis of liability has yet to be determined. With regard to the *NAMC* suit, which settled on January 29, 2002, the existence and/or extent of the insurers' liability raises questions of fact and summary judgment is therefore inappropriate. *See Emons Indus., Inc. v. Liberty Mut. Fire Ins. Co.*, 481 F.Supp. 1022, 1027 (S.D.N.Y.1979) (Duffy, J.) (holding that where the insurer refused to defend, its liability for the settlement was a question of fact).

Accordingly, summary judgment is denied as to the duty to indemnify Park Place for compensatory damages in the *NAMC* and *President* actions.[6]

## V. American National and Ohio Casualty Argument

American National Fire Insurance Company and Ohio Casualty Insurance Company make an additional argument in their motion. These companies state that their policies provide for coverage only when the amount owed is determined by settlement with their consent or by actual trial and final judgment. They argue that since this condition has not been met the claims against them must be dismissed. This argument is completely devoid of merit.

■ Under New York law, an insurer declines coverage at its own risk. *See American Ref Fuel Co. of Hempstead v. Resource Recycling, Inc.*, 281 A.D.2d 573, 574, 722 N.Y.S.2d 570 (2d Dept.2001) ("an insurer cannot insist upon cooperation or adherence to the terms of its policy after it has repudiated liability on the claim. . . ."); *Texaco A/S (Denmark) v. Commercial Ins. Co. of Newark, NJ*, 160 F.3d 124, 128 (2d Cir.1998) (applying New York law) (explaining that when there is a denial of coverage, the insured is entitled to settle the claim and recover the settlement amount from the insurer, provided the settlement is reasonable). Once Park Place received notice repudiating liability, it was entitled to defend itself and to negotiate reasonable settlements without the companies' consent. Therefore, summary judgment on the basis of this argument is denied.

## VI. Bad Faith Failure To Defend/Indemnify

Park Place has offered absolutely no evidence to support a claim of bad faith on the part of the insurers in this case. *See Wright v. Coughlin* 132 F.3d 133, 137 (2d Cir.1998) ("To defeat summary judgment, the non-movant must produce specific facts indicating that such an issue exists.") (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Accordingly, defendants' motion is granted

---

5. Another dispute between the parties was whether the Catskill complaint could trigger the duty to defend under policies issued for the period of 2000–2001. Because the defense costs of *Catskill* did not exceed the 1999–2000 Transcontinental primary policy limit, the dispute over coverage under the 2000–2001 policies is also moot.

6. To the extent that Park Place asserts a claim for indemnification for punitive damages, its argument fails as a matter of law. *See Home Ins. Co. v. American Home Products*, 75 N.Y.2d 196, 551 N.Y.S.2d 481, 550 N.E.2d 930, 932 (1990) ("There is no question that the general rule . . . is that New York public policy precludes insurance indemnification for punitive damage awards.").

with respect to Counts 4 and 5 of the amended complaint.

**IT IS SO ORDERED.**