Fehlhaber Corporation et al., Respondents, *v.* Unicon Management Corp. et al., Appellants.

First Department, July 3, 1969.

*Samuel Gottlieb* of counsel (*Harry Giesow* with him on the brief; *Gainsburg, Gottlieb, Levitan & Cole,* attorneys), for appellants.

*Louis Cantor* of counsel (*Max E. Greenberg,* attorney), for respondents.

McNALLY, J. Defendants appeal from a judgment for $410,046.88 (nonjury), representing the amount due on a subcontract for pile driving incident to the construction of the Newtown Creek Pollution Control Project (" Project "). Said sum is made up of retained percentages of installment payments for work performed and the excess of the sum of $96,000 withheld by defendants from progress payments due plaintiffs for insurance premiums over the audited insurance premiums for which plaintiffs are liable under the subcontract.

Defendants entered into a contract with the City of New York for the construction of the Project entailing a cost. of

$42,000,000. Plaintiffs' subcontract dated February 11, 1963 involves about $7,000,000. It provides: "The Subcontractor hereby agrees to be bound by all the pertinent terms, conditions, and provisions of the Principal Agreement".

The principal agreement, under the caption of "Payment to Subcontractor", provides: "The agreement between the Contractor and his subcontractor shall contain the same terms and conditions as to method of payment for work labor and materials, and as to retained percentages as are contained in this contract." Following is a provision obligating the contractor, the defendants, to pay subcontractors in accordance with the terms of their respective subcontracts.

Paragraph 30 of the printed subcontract is, in part, as follows: "30. The Contractor shall pay to the Subcontractor for full performance of this subcontract [the sum of] *see attached sheet* in accordance with the mode of payment herein set forth, subject, however, to such additions, deductions or adjustments as are provided for herein and/or in the Principal Agreement. The Subcontractor hereby agrees to accept said sum in full consideration and satisfaction of any and all claims under this subcontract. In no event shall the Contractor be liable to the Subcontractor for any claims or damages or for work performed, except as provided for herein. Partial payments by the Contractor to the Subcontractor hereunder shall be made only at such time or times as payments made by the Owner to the Contractor shall include work completed by the Subcontractor, and then, only in the ratio that the work performed by the Subcontractor bears to all work to be done by him under this subcontract or to the extent that the Contractor has received payment for said work, whichever is the lesser. In any event, payment will not be made by the Contractor to the Subcontractor until the Owner has made payment to the Contractor for the work. [The Contractor hereby reserves the right to withhold TEN (10%) per cent of such payments as retainable until the Contractor receives final payment from the Owner upon completion of the entire job;]"

The bracketed portion of the printed clause is deleted; the italicized portion is typed. The margin of the printed paragraph is initialed by the parties.

Attached to printed paragraph 30 is typewritten paragraph 30, which reads:

"30. The Contractor shall pay to the Subcontractor for full performance of this subcontract — See Unit Prices Rider 'A'. Basis of payment will be as allowed under the specifications for contract items 2A, 2B and 3.

" The Contractor will retain from each monthly partial payment 10% of such payment until 50% of the estimated subcontract price, mentioned in Rider ' A ', has been reached. All subsequent monthly partial payments are then to be made with no retainage.

" The retainage of 5% of the estimated contract price is to be paid to the Subcontractor by the Contractor as follows:

" 1 — One-half of this retainage should be paid 90 days after the completion and acceptance of the Subcontractor's work.

" 2 — The then remaining balance, less the Lump Sum of $25,000.00 should be paid by the Contractor to the Subcontractor 180 days after the completion and acceptance of the Subcontractor's work.

" 3 — The Lump Sum of $25,000.00 still retained is to be paid by the Contractor to the Subcontractor upon receipt of the final payment by the Contractor from the City."

Typewritten paragraph 30 is also initialed by the parties.

The fourth and fifth sentences of printed paragraph 30 relate to partial payments. As to partial payments it is provided: " In any event payment will not be made by the Contractor to the subcontractor until the Owner has made payment to the Contractor for the work." The sixth sentence, which is deleted, deals with the withholding of 10% of the partial payments.

Typewritten paragraph 30 deals with the retainer by the contractor, the defendants, of 10% of each monthly partial payment " until 50% of the estimated subcontract price, mentioned in Rider ' A ', has been reached." Thereafter, it states, no retainage shall apply. It further provides the retainage " of 5% of the estimated contract price " is to be paid one half 90 days after " completion and acceptance of the Subcontractor's work " and the balance, except for $25,000, to be paid " by the Contractor to the Subcontractor 180 days after the completion and acceptance of the Subcontractor's work." The remaining $25,000 is to be paid " upon receipt of the final payment by the Contractor from the City."

The principal contract between defendants and the city provides as to retained percentages as follows: " As further security for the faithful performance of this Contract, the Comptroller shall deduct and retain until the final payment, 10% of the value of the work certified for payment in each partial voucher, until the amount so deducted and retained shall equal 5% of the contract bid price ".

Typewritten paragraph 30 is internally inconsistent in providing for 10% monthly retainers until 50% of the subcontract

price and limiting payment thereof to the subcontractor to the " retainage of 5% ". Retainage of 10% of monthly installments cannot produce more than 10% of the estimated subcontract price. Hence, the provision for retaining 10% of monthly partial payments until 50% of the subcontract price is unattainable. That it was intended that the accumulation of the retained sums was to cease when they had reached the equivalent of 5% of the estimated subcontract price is confirmed by the provision for payment thereof to the subcontractor, the plaintiffs, limited to " 5% of the estimated contract price ". Moreover, the provision of the principal contract for retainer from partial payments is likewise limited to " 5% of the contract bid price ".

The provisions for retainer in the principal contract are for the benefit of the city. Plaintiffs and defendants were free to make their own arrangement for payments so long as the right of the city to retain from installment payments to the contractor was unaffected. The provisions in the subcontract for payment of the retainage to plaintiffs were not in conflict with " *pertinent* terms * * * of the Principal Agreement." (Emphasis supplied.) Hence, the parties to the subcontract are concluded by its terms relative to the retainage.

Typewritten paragraph 30 of the subcontract provides for payment of the retainage to the subcontractor in three installments. The last installment of $25,000 " is to be paid by the Contractor to the Subcontractor upon receipt of the final payment by the Contractor from the City ". The principal contract sets forth the required procedure for the final payment. This includes preparation and certification of a final voucher by the engineer, approval of the voucher by the Commissioner of Public Works, and filing of the voucher with the Comptroller. The Commissioner is required to certify the voucher for final payment within 30 days from the " date of completion and acceptance of the work ", and payment is to " be made by the Comptroller within 30 days after the filing of such voucher in his office."

Since the last installment of retainage alone is conditioned upon the receipt of the final payment by the contractor, the two prior payments of the retainage necessarily were to precede the final payment to the contractor. And typewritten paragraph 30 so provides. One half of the retainage is payable " 90 days after the completion and acceptance of the Subcontractor's work " and the balance, less $25,000, is payable " 180 days after the completion and acceptance of the Subcontractor's work."

The trial court found and the evidence establishes that plaintiffs drove the last piles and completed all their work by February 6, 1966. Thereafter defendants completed the pile cap work. Defendants have certified to the city that plaintiffs performed and the city's engineer approved and accepted all the pile work. Thereby is established "the completion and acceptance of the Subcontractor's work" within the meaning of typewritten paragraph 30 of the subcontract. Defendants, therefore, were required to pay one half of the retainage within 90 days of February 6, 1966 and the balance, less $25,000, within 180 days of said date.

The subcontract also made provision for insurance costs attributable to plaintiffs' subcontract. This was estimated at $96,000 and the contractor was authorized to deduct $8,000 from each monthly progress payment until that sum had been accumulated. Final adjustment of the insurance costs was to be made prior to final payment to the subcontractor on the basis of rates to be agreed upon by the parties, which were not to exceed the net rates paid by the subcontractor to his insurance company.

The trial court found defendants' insurance company made a final audit of plaintiffs' payroll and business records; that thereon the total insurance cost of covering plaintiffs' work was found to be $48,683.40. The deductions of $96,000 made by defendants from sums due plaintiffs exceeded the insurance cost by $47,316.60. The record abundantly sustains this finding.

Paragraph 4(c) of the subcontract provides, in part: "Since the Contractor is paying the premium for the insurance as hereinbelow set forth, the Subcontractor and any sub-subcontractor waive any right which they may have to any dividend, premium discount, return premium or premium refund which may be paid to the Contractor by the carrier or to which the Contractor may be entitled and any such sums shall inure and belong to the Contractor who need not account therefor to the Subcontractor. This provision shall be self operative and no other documentation of any kind shall be required in order to authorize the carrier to pay such sums to the Contractor."

Defendants' reliance on paragraph 4(c) is misplaced for they have failed to establish that the surplus of insurance payments made by plaintiffs is attributable "to any dividend, premium discount, return premium or premium refund". The proof is the other way — that defendants' premiums allocable to plaintiffs' subcontract did not exceed $48,683.40.

The judgment should be affirmed with costs.

TILZER, J. (dissenting). The plaintiffs-respondents received from the general contractors, the defendants-appellants. in

excess of .$5,800,000 as progress payments, less retained percentages, under their subcontract to perform the required pile driving work for the construction of the Newtown Creek Pollution Control Project. By the instant action the plaintiffs sought payment of the "retainages" (approximately $322,000 — the amounts are not disputed) as well as a refund of insurance premium payments made by plaintiffs to defendants under the subcontract.

The plaintiffs' right to recover the retainages depended whether there was "completion" and "acceptance" of the plaintiffs' work within the meaning of those terms in the contractual commitments governing the parties. Plaintiffs claimed, and the trial court so held, that their work was completed and accepted on February 6, 1966 when all piles had been accepted by the defendants and the owner, the City of New York. Defendants contended that the only one empowered to accept the plaintiffs' work was the Commissioner of the Department of Public Works of the city, and that until such time as the retainages were released and paid by the city to them, their obligation of payment to the plaintiffs did not mature.

We agree with the trial court that the "question of what final acceptance is is a question of the interpretation of the contract." We disagree with his conclusion that acceptance was the act of the general contractor, the defendants, and took place when the pile work was completed. Such interpretation, in our view, constitutes an alteration of the contractual definition of "acceptance."

The subcontract provided that plaintiffs agreed "to be bound by all the pertinent terms, conditions and provisions of the Principal Agreement as though said terms, conditions and provisions were herein fully set forth at length." The principal agreement, the contract with the city, specifies "'Approved,' 'acceptable,' 'satisfactory,' and words of similar import shall mean and intend approved, acceptable or satisfactory to the Commissioner." The principal agreement further specifies that the subcontract "shall contain the same terms and conditions as to method of payment for work labor and materials, *and as to retained percentages as are contained in this contract.*" (Emphasis added.) While the Commissioner on July 31, 1967 certified that portions of the work were considered to be "substantially complete" (as contrasted with "Final Acceptance" hereinafter defined), he did not, as he might in his discretion pursuant to the principal contract, issue a voucher calling for payment of any part or all of the balance due under the contract, *including moneys retained.* Retainages are held by the

city and their return may be sought at the end of guarantee periods, as the general contract stipulates, following "final acceptance of the work by the Commissioner, as evidenced by his signature upon his certificate of completion and acceptance filed in the Office of the Comptroller, a copy of which shall be sent to the Contractor." No certificate of final acceptance has been issued by the Commissioner and the city still retains approximately $1,000,000 as retainages under the principal contract. And last but not least, the subcontract expressly stated that " payment will not be made by the contractor to the subcontractor until the owner [City] has made payment to the contractor for the work."

Reading the instruments as a whole, and giving due recognition to the circumstances of the parties and to the purpose which they sought to accomplish, we find that the plaintiffs failed to prove final acceptance of their work entitling them to the payment of the retainages. The defendants' obligation to pay the retainages has not accrued but will arise upon final acceptance by the Commissioner or payment to the defendants. (*Eighth Ave. Coach Corp.* v. *City of New York,* 286 N. Y. 84, 88–89; *Mascioni* v. *Miller, Inc.,* 261 N. Y. 1.)

Insofar as the court awarded the plaintiffs $47,316.60 for unexpended insurance premiums, we find that our minds are not moved, as was the trial court's " in some degree however slight," to a holding that plaintiffs established their right to an adjustment as to *all* insurance premiums. The typewritten rider to the subcontract did not provide for adjustment with respect to any coverage except return premiums given to the contractor in the event the subcontractor's experience modification for workmen's compensation had been reduced. The plaintiffs' proof failed to meet this issue. Their only witness as to the insurance claim failed to establish what part, if any, of the premium was properly allocable to workmen's compensation, so as to bring into play the provision of the rider which would give to plaintiffs credit for the return premium relating to such insurance.

The judgment appealed from should be reversed in its entirety and the complaint dismissed as to the claim for retainages withheld, without prejudice, and insofar as the judgment awarded a refund of insurance premiums a new trial should be had on the issue above set forth.

McGIVERN and NUNEZ, JJ., concur with McNALLY, J.; TILZER, J., dissents in opinion in which CAPOZZOLI, J. P., concurs.

Judgment affirmed with $50 costs and disbursements to the respondents.