Fed. Ins. Co. v Tyco Intl. (2004 NY Slip Op 50160(U))

[*1]

 Fed. Ins. Co. v Tyco Intl.

2004 NY Slip Op 50160(U)

Decided on March 5, 2004

Supreme Court, New York County,

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 5, 2004

Supreme Court, New York County,
 FEDERAL INSURANCE COMPANY, Plaintiff, -
against
TYCO INTERNATIONAL LTD., MICHAEL A. ASHCROFT, MARK A. BELNICK, JOSHUA M. BERMAN, RICHARD S. BODMAN, JOHN F. FORT, III, STEPHEN F. FOSS, BYRON S. KALOGEROU, L. DENNIS KOZLOWSKI, WENDY E. LANE, JAMES S. PASMAN, JR., W. PETER SLUSSER, MARK H. SWARTZ, FRANK E. WALSH, JR., JOSPEH F. WELCH, and JOHN DOES 1-50, Defendants.
INDEX NO.600507/03

For Plaintiff Federal Insurance Company:
Hogan & Hartson L.L.P.
875 Third Avenue
New York, New York 10022
Att: Paul Sweeney, Esq. and Christoppher Wren
and
Hogan & Hartson
555 Thirteenth Street, NW
Washington, DC 20004
Attn: David J. Hensler, Esq., David Newmann, Esq. and Michael Steinberg, Esq.
Attorneys for Frank Walsh, Jr.:
Friedman Wang & Bleiberg, P.C.
90 Park Avenue
New York, NY 10016
Attn: Peter N. Wang, Esq.
Attorneys for Mark H. Swartz:
Molod Spitz & DeSantis, P.C.
104 West 40th Street
New York, New York 10018-3617
Attn: Milton Thurm, Esq.
[*2]
Attorneys For Defendant L. Dennis Kozlowski:
Moses & Singer LLP
1301 Avenue of the Americas
New York, NY 10019
Attn: Philippe Zimmerman, Esq.
and
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, DC 20006
Attn: Andrew Reidy, Esq. and Cass W. Christenson, Esq.
Attorneys for Mark A. Belnick:
Dickstein Shapiro Morin & Oshinsky LLP
1177 Avenue of the Americas
New York, New York 10036-2714
Att: Jana Eisinger, Esq.
Dickstein Shapiro Morin & Oshinsky LLP
2101 L. Street, N.W.
Washington, DC 20037-1526
Att: Jerold Oshinsky, Esq.

HELEN E. FREEDMAN, J. 
The following papers, numbered 1 to were read on this motion to/for 
Ý PAPERS NUMBERED
Ý
Ý
Ý
Cross-Motion: [ ] Yes [x] No
This declaratory judgment action concerns whether Tyco International, Ltd. ("Tyco"), L. Dennis Kozlowsi, and other former Tyco officers or directors facing civil lawsuits and criminal proceedings are entitled to liability insurance coverage to defend and indemnify them.
Plaintiff Federal Insurance Company ("Federal") issued a series of directors and officers liability policies (the "Policies") to defendant Tyco that also covered individual defendants who have been accused of misstating Tyco's finances via unethical accounting procedures, [*3]misrepresenting and concealing material information in public filings with the U.S. Securities and Exchange Commission (the "SEC"), and misappropriating hundreds of millions of dollars from Tyco by receiving improper cash and stock bonuses and interest-free loans. The accused Tyco officers include Kozlowski, who is moving for partial summary judgment: he served as Tyco's Chief Executive Officer from 1992 until June 2002, and at relevant times also was the company's President, Director, and Chairman of the Board of Directors. Kozlowski is now a defendant in more than thirty civil lawsuits and criminal proceedings (the "Underlying Lawsuits") that allege misconduct and wrongdoing in his capacity as a Tyco officer.
In February 2003, after Kozlowski had notified Federal of the Underlying Lawsuits and demanded that Federal provide him with a defense or pay his defense costs, Federal unilaterally rescinded the Policies and returned the defendants' premiums on the ground that Kozlowski had misrepresented material information about Tyco's finances and other matters in his applications for insurance. Federal commenced this lawsuit, which seeks (1) a declaration confirming that the Policies are rescinded and void ab initio or (2) in the alternative, a declaration that certain exclusions in the Policies bar the defendants from coverage. Kozlowski counterclaimed for (1) a declaration that the Policies covers Kozlowski's losses under the Underlying Lawsuits, or that at a minimum Federal has a duty to defend and to pay defense costs for the Underlying Lawsuits, and (2) damages for breach of the Policies. Kozlowski also asks for a hearing to determine the amount which Federal must pay him to reimburse him for past defense costs.
Kozlowski now moves for partial summary judgment, seeking a declaration that the Policies requires Federal to immediately defend him, or pay his defense costs on an ongoing basis, in three of the Underlying Lawsuits: Overby v. Tyco, Case No. 02-CV-13-7-B (D.N.H.) (the "ERISA Action"); In re Tyco, Multi-district Litigation Docket No. 02-1335-B (D.N.H.)(the "Securities Action"); and People v. Kozlowski, index no. 5259/02 (N.Y. Sup. Ct.)(the "Criminal Action"). In opposition, Federal argues that it validly rescinded the Policies and thereby erased any duty to defend Kozlowski, that the "personal profit" exclusion in the Policies also bars Kozlowski's claim for coverage, and that summary judgment cannot be granted because factual disputes exist and because no discovery has been conducted.
For the reasons set forth below, Kozlowski's motion is granted to the extent that it is declared that Federal must defend Kozlowski in the ERISA Action and pay his defense costs in the Securities Action and the Criminal Action. The request for a hearing is denied without prejudice.
Background: the Policies This case involves two"Executive Protection Policies" that continuously covered the insureds from March 15, 1999 through March 15, 2003. The relevant provisions in the Policies are identical in all material respects.[FN1] The Policies covered Kozlowski, as an officer of Tyco, against "Loss" because of "Claims" alleging "Wrongful Acts" as defined in the Policies. They provided various types of coverage, including "Fiduciary Liability" and "Executive Liability and Indemnification." In the Fiduciary Liability section of the Policies, "Wrongful Acts" are defined to include, among other things, any breach of "responsibilities, [*4]obligations, or duties" imposed on Kozlowski and the other insureds as fiduciaries of employee benefit plans governed by the Employee Retirement Plan of 1974, as amended ("ERISA"). The section also contains a "duty to defend" provision, under which Federal "shall have the right and duty to defend any Claim covered by this coverage section."
The Policies's Executive Liability and Indemnification ("ELI") section provide that

[Federal] shall pay on behalf of [any insured persons] all Loss for which [the person] is not indemnified by [Tyco] and which [the person] becomes legally obligated to pay on account of any claim first made against [the person], individually or otherwise, during the [period of the Policies], for a Wrongful Act committed, attempted, or allegedly committed or attempted by [the person] before or during the [period of the Policies].
The ELI section defines "Wrongful Act" to include certain intentional and negligent conduct:

any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted, by [an insured person], individually or otherwise, in his [capacity as an officer of Tyco], or any matter claimed against him solely by reason of his serving in such [capacity].[FN2]
Moreover, the ELI section contains a "severability" clause with respect to the representations made to Federal in Tyco's applications for insurance:

Such written application(s) for coverage shall be construed as a separate application for coverage by each of the [insured persons]. With respect to the declarations and statements contained in such written application(s) for coverage, no statement in the application or knowledge possessed by any [insured person] shall be imputed to any other [insured person] for the purpose of determining if coverage is available.
Finally, both the Fiduciary Liability and ELI sections contain a "personal profit" exclusion:

[Federal] shall not be liable for [losses] on account of any Claim made against any [insured] based upon, arising from, or in consequence of such [insured] having gained in fact any personal profit, remuneration or advantage to which such [insured] was not legally entitled.
Underlying Lawsuits: The ERISA Action As noted, Kozlowski presently seeks coverage with respect to three of the Underlying Lawsuits. The first, the ERISA Action, consolidates separate actions brought by participants (the "Participants") in seven "Retirement Savings and Investment" employee benefit plans offered by Tyco and its affiliates (the "Plans"). The Consolidated Amended Complaint (the "ERISA Action Complaint") alleges that all of the Plans are managed by the same fiduciaries, including Kozlowski, they all offer shares in the Tyco International Ltd. Stock Fund (the "Tyco Stock Fund") as an investment option for participants, and all have their assets held in one master trust. The two-count complaint alleges that Kozlowski and the other defendants breached their fiduciary duties under ERISA to the Plans and the Participants by "(a) negligently misrepresenting and negligently failing to disclose material [*5]facts to the Plans and the Participants in connection with the management of the Plans' assets and (b) negligently permitting the Plans to purchase and hold shares in the Tyco Stock Fund when it was imprudent to do so." As a result of their misconduct, the Participants claim, the defendants are "personally liable to make good to the Plans the losses resulting from each such breach of fiduciary duty."
With respect to the claim of negligent misrepresentation and failure to disclose, the Participants allege that the defendants should have informed them that (1) Kozlowski and other executives of Tyco had "received hundreds of millions of dollars of corporate assets," (2) "the reported results of operations of [Tyco] were consistently materially overstated and not in accordance with Generally Accepted Accounting Principles ("GAAP")", (3) Tyco had spent more than $ 8 billion in undisclosed corporate acquisitions which "misrepresented the basis of Tyco's growth, caused Tyco to incur substantial interest expense and ultimately resulted in a diminution of corporate earnings," and (4) Tyco had consistently used "improper accounting techniques"to inflate their reported earnings; according to the Participants, "the misreporting of financial results, the undisclosed acquisitions and the use of improper accounting techniques to maximize reported earnings made [Tyco] appear to be a successful turnaround specialist and growth company when that was not the case."
As for the second claim, the Participants allege that Kozlowski and the other defendants should not have allowed the Plans to invest more than $ 700 million in the Tyco Stock Fund because (1) Tyco's acquisition program was highly risky, (2) its accounting was "impenetrable", and therefore the Plans could not evaluate the merits of the investment, (3) Tyco's management, including Kozlowski, was "engaged in material unauthorized transactions," and (4) analyst reports about Tyco should not have been trusted.
The Securities Action This action consolidates lawsuits by Tyco shareholders (the "Shareholders") that allege violations of securities laws and rules. The Consolidated Securities Class Action Complaint (the "Securities Action Complaint") alleges, among other things, that Kozlowski's misstatements, misleading statements, acts, and omissions caused the Shareholders to buy Tyco stock at excessive prices. For example, the Shareholders claim that Kozlowski knew or was reckless in not knowing that Tyco issued false and misleading financial reports and other public statements and used accounting practices that violated GAAP.
The Criminal Action The Indictment in the Criminal Action accuses Kozlowski and co-defendant Mark Swartz, another former Tyco officer and director, of the crime of "enterprise Corruption", in violation of Penal Law § 460.20(1)(a). The Indictment charges that Kozlowski, Swartz, and other persons and entities collaborated to

obtain[] money by theft, fraud in the sale of securities, and other frauds in which [Tyco], its predecessor and subsidiary companies wee, variously, the victims and the vehicles of the thefts and frauds. To accomplish these purposes, members of [the criminal enterprise] falsified records, bribed others, and concealed and distorted material information.
The Indictment sets forth thirty-nine counts against Kozlowski, including multiple counts of first-degree grand larceny, multiple counts of first-degree falsifying of business records, enterprise corruption, violation of GBL § 352-c(5), and fourth-degree conspiracy. The gist of a majority of [*6]the counts against Kozlowski is that he misappropriated hundreds of millions of dollars from Tyco in the form of unauthorized and improper cash and stock bonuses and interest-free loans, and falsified Tyco's business records to conceal his crimes.
Unilateral Rescission and Action for Declaratory Judgment By letter dated February 13, 2003 from Federal to Tyco (the "Rescission Letter"), Federal notified the company that it was rescinding the Policy then in effect "based upon material misrepresentations and omissions in the information that Federal relied upon in issuing and extending the Policy." According to the Rescission Letter, Federal had agreed to issue an endorsement to the '01-'02 Policy, effective March 15, 2002, which extended coverage until March 15, 2003, only after its underwriters had reviewed, among other things, (1) the public Form 10-K annual reports that Tyco had filed with the SEC in December 2000 and December 2001 (the "10-K's"). After Federal had issued the endorsement, however, Tyco disclosed in, among other things [FN1], a Form 8-K Current Report filed in September 2002 , that over the past several years, Kozlowski and other top Tyco executives had misappropriated more than $ 700 million of Tyco's funds by receiving unauthorized cash and stock bonuses and borrowing money from Tyco interest-free for unauthorized purposes. The 8-K stated that, after an internal investigation, Tyco had learned that

During at least the five years prior to June 3, 2002, Tyco's three top corporate officers its CEO [i.e., Kozlowski], its CFO, and its Chief Corporate Counsel engaged in a pattern of improper and illegal conduct by which they enriched themselves at the expense of [Tyco] with no colorable benefit to [Tyco] and concealed their conduct from the Board and its relevant committees. Furthermore, the Rescission Letter claimed, "Tyco has made other disclosures since June 2002 that acknowledged material inaccuracies in Tyco's financial statements and acknowledged fundamental deficiencies in Tyco's accounting and management systems."
On or about February 13, 2003, the same day it sent the Rescission Letter, Federal filed this lawsuit against Kozlowski, Tyco, and fourteen other named defendants; on May 8, 2003, Federal filed a First Amended Complaint dropping its claims against Tyco and all other defendants except Kozlowski and three other Tyco executives.
Motion Kozlowski now moves for a declaration that Federal has a duty to defend Kozlowski (under fiduciary liability coverages) and a duty to pay defense costs (under the executive liability coverages). The threshold issue is whether Federal's unilateral rescission and ongoing lawsuit for a declaratory judgment excuses its present duty, if any, to defend Kozlowski in the Underlying Lawsuits. There is little case law in New York that addresses whether a liability insurer that has claimed that its policy was void ab initio because the insured misrepresented material facts on the policy application is still obligated under that policy to defend claims against the insured until the insurer's rescission claim is adjudicated. However, courts in other jurisdictions have held that an insurer's present duty to defend the insured under a [*7]liability policy is unaffected by an unproven claim for rescission. See Gon v. First St. Ins. Co., 871 F.2d 863, 864-65 (9th Cir. 1989) (affirming district court's order that insurer pay insured's defense costs after the district court had held insurer's rescission action "in abeyance"); Indep. Petrochem. Corp. v. Aetna Cas. & Sur. Co., 654 F.Supp. 1334, 1345-46 (D.D.C. 1986), rev'd in part on other grounds, 944 F.2d 940 (D.C. Cir. 1991) (finding that insured's primary carrier had duty to defend it until the insurer proved that the policy was "negated by fraud"); Natl. Union Fire Ins. Co. of Pitt. v. Brown, 787 F.Supp. 1424, 1427 n.8 (S.D. Fla. 1991) (court could not declare directors and officers policy void ab initio until the insurer's rescission action was "fully litigated"; until then, policy remained in effect); U.S. Fid. & Guar. Co. v. Thomas Solvent Co., 683 F.Supp. 1139, 1151-52 (W.D. Mich. 1988) (when insurer's motion for summary judgment on rescission claim was denied, due to genuine dispute as to whether the insured obtained the policy by fraud and misrepresentation, the insurer had duty to defend); Hoechst Celanese Corp. v. Natl. Union Fire Ins. Co. of Pitt., 1994 WL 721618 at *4 (Del. Super. Ct. 1994) ( insurer obligated to defend despite its unproven that insured procured the policies by fraud); accord Natl. Union Fire Ins. Co. of Pitt. v. Rhone-Poulenc Basic Chems. Co., 1992 WL 22690 at *5-*8 (Del. Super. Ct. 1992); but see Chi. Ins. Co. v. Kretizer & Vogelman, 2000 WL 16949 at *10 (S.D.N.Y. Jan. 10, 2000) (where the insurer had (1) unilaterally rescinded professional liability policies, (2) brought related a declaratory judgment action to confirm rescission, and (3) moved for summary judgment for declaration, and the insured had cross-moved for a declaration that insurer had duty to defend, summary motion was denied to both parties because of issues of material fact regarding rescission).
The reasoning of the courts in the above-cited cases is persuasive and is adopted here: until Federal's rescission claims are litigated in its favor and the Policies are declared void ab initio, they remain in effect and bind the parties. Federal contends that these cases are inapposite because they do not address the "the insurer's right of unilateral rescission," but rather involve circumstances in which the insurers sought a judicial declaration of rescission or asserted misrepresentation as a defense. According to Federal, the circumstances of this case differ because Federal had "unilaterally" rescinded the Policies by delivering the Rescission Letter and returning Kozlowski's premium. However, that difference is irrelevant: the cited cases and this action are materially alike in that all the insureds have challenged whether the insurers validly can rescind their policies, and have sought an adjudication finding the policies valid and binding and directing the insurers to perform under them.[FN2]
Accordingly, Federal's unproven rescission claim does not affect its present obligation to defend Kozlowski or pay his defense costs under the Policies. However, if Federal ultimately prevails in this action and the Policies are declared to be void ab initio, Federal may be able to recover its costs for the defense it has provided Kozlowski.
Duty to Defend or Pay Defense Costs The next issue is whether Federal has a duty [*8]under the Policies to defend or pay defense costs for Kozlowski in the ERISA Action, the Securities Action, and the Criminal Action. It is well settled that the duty of an insurer to defend its insured or pay its defense costs is distinct from and broader than its duty to indemnify. See Fitzpatrick v. Am. Honda Motor Co., 78 N.Y.2d 61, 65 (1991). The duty exists whenever a complaint against the insured alleges claims that may be covered under the insurer's policy. Id. If any portion of a complaint might result in coverage, the insurer must defend or pay defense expenses for all claims, both covered and non-covered. See 30 W. 15th St. Owners Corp. v. Travelers Ins. Co., 165 A.D.2d 731, (1st Dept. 1990). Conversely, the insurer has no duty if, as a matter of law, the allegations in the complaint could not give rise to any obligation to indemnify, or the allegations fall within a policy exclusion. See Allstate Ins. Co. v. Zuk, 78 N.Y.2d 41, 45 (1991). But the duty to defend or pay defense costs is construed liberally and any doubts about coverage are resolved in the insured's favor. See Volney Residence, Inc. A. Mut. Ins. Co., 195 A.D.2d 434, 434 (1st Dept. 1993). Furthermore, an insurer can only invoke a policy exclusion to avoid coverage if it can show that "the allegations in the complaint cast that pleading solely and entirely within the policy exclusions." Intl. Paper Co. v Continental Cas. Co., 35 N.Y.2d 322, 32 (1974). If the complaint's allegations give rise to a duty to defend, the insurer cannot use extrinsic facts to show otherwise. See Fitzpatrick,, 78 N.Y.2d at 65; Petr-All Petroleum Corp. v. Fireman's Ins. Co. of Newark, 188 A.D.2d 139, 142 (4th Dept. 1993). The duty to defend arises when the action is brought and is unaffected by the outcome of the action. See Lapierre, Litchfield & Partners v. Continental Cas. Co., 59 Misc.2d 20, 22 (Sup. Ct. N.Y. Co.), judgm. modified on other grounds, 32 A.D.2d 370 (1st Dept. 1969); Natl. Union Fire Ins. Co. of Pitt. v. City of Oswego, 295 A.D.2d 905, 905 (4th Dept. 2002); see also A. Mut. Ins. Co. v. Terk Techs. Corp., 309 A.D.2d 22, 33 (1st Dept. 2003) (Andrias, J., concurring).
Duty to Defend: the ERISA Action Policies, cover, among other things, liability for "Wrongful Acts" by Kozlowski, defined to include breaches of his "responsibilities, obligations or duties" under ERISA in his capacity as a fiduciary of benefit plans. The allegations against Kozlowski in the ERISA Action complaint fall squarely within the definition of "Wrongful Acts." The ERISA Action plaintiffs claim that Kozlowski breached fiduciary duties to employee benefit plans and their participants by negligently misrepresenting and failing to disclose material information, and by negligently allowing the plans to invest imprudently. The "personal profit" exclusion in the Policies does not excuse Federal from coverage, inasmuch as the ERISA Action plaintiffs do not allege that Kozlowski personally profited from his breach of fiduciary duty. Accordingly, Federal is obligated to defend Kozlowski in the ERISA Action.
Duty to Pay Defense Costs: the Securities Action The ELI section does not require Federal to defend Kozlowski for covered liabilities, but only to pay his defense costs. The section's definition of "Wrongful Acts" include any "misstatement, misleading statement, act, omission, neglect, or breach of duty" by Kozlowski in his capacity as an officer of Tyco. This broad definition encompasses the claims by the Securities Action plaintiffs against Kozlowski: in essence, the plaintiffs accuse Kozlowski, in his capacity as a Tyco's officer, of overstating the company's assets and profits, and withholding material information from the plaintiffs, to inflate the price of its stock. Although Kozlowski may have indirectly profited from this alleged misconduct, the "personal profit" exclusion does not apply because the plaintiffs ' claims against Kozlowski are based upon his alleged misstatements and omissions and the harm they caused [*9]plaintiffs. Thus, Federal is obligated to pay Kozlowski's defense costs in the Securities Action.
The Criminal Action In addition to civil lawsuits, the Policies cover defense costs and other loss for a "criminal proceeding commenced by the return of an indictment." Moreover, the Policies cover fraud claims unless a "judgment or other final adjudication adverse to the Insured Person establishes such a deliberately fraudulent act or omission or willful violation [of a statute or regulation]." The Indictment describes Kozlowski as "the boss of the criminal enterprise" which obtained money through theft and fraud, with Tyco and its affiliates as both "the victims and the vehicles" of the enterprise's crimes. Inasmuch as Kozlowski purportedly allegedly committed these acts while acting as a Tyco officer, they constitute "Wrongful Acts" as defined in the ELI section, and the related allegations in the Indictment are covered under the Policies. Thus Federal is obliged to pay Kozlowski's defense costs in the Criminal Action.
The "personal profit" exclusion does not excuse Federal from covering Kozlowski in his criminal trial. While the Indictment alleges that Kozlowski obtained money illegally through the criminal enterprise, it also accuses him of crimes from which he did not directly profit. For example, the twenty-second count of the Indictment alleges that Kozlowski committed the crime of Falsifying Business Records in the First Degree under Penal Law § 175.10 when he "made and caused to be made a false entry in the business records of [Tyco], to wit, a loan participation agreement aggregating $8,481,764.21 between [a Tyco affiliate] and an employee [Tyco]." Since this count and others do not fall within the coverage exclusion, Federal's duty to provide defense costs extends to the entire Criminal Action. Of course, this determination has no bearing on Kozlowski's guilt or innocence in the Criminal Action, or his liability to the plaintiffs in the ERISA and Securities Actions.
Request for Hearing The application for a hearing to determine the amount of past defense costs for which Federal will reimburse Kozlowski is denied at this time, inasmuch as there is no indication that the figure is in dispute. If agreement cannot be reached on this issue, a hearing may become necessary.
Motion for partial summary judgment granted in part as set forth above. Settle judgment. The parties are directed to appear for a preliminary conference before the Court on April 6, 2004 at 9:30 a.m. (Courtroom 208, 60 Centre St., NY, NY). This is the order of the Court.
Dated: March 5, 2004 
Helen E. Freedman, J.S.C.
Check one: [ ] FINAL DISPOSITION [x] NON-FINAL DISPOSITION
Decision Date: March 05, 2004
Footnotes

Footnote 1:For ease of reference, Executive Protection Policy No. 8121-34-42-H, with a policy period March 15, 2001 to March 15, 2003, will be quoted.

Footnote 2:Effective March 15, 2002, Wrongful Act was re-defined to include acts committed by Kozlowski before, as well as during, the period that the Policies were in effect.

Footnote 1:According to the Rescission Letter, Tyco's disclosures were also contained in complaints that Tyco filed from June to September 2002 to commence lawsuits against Kozlowski and Tyco officials, and in a Consent Agreement that Tyco entered into with the New Hampshire Bureau of Securities Regulation in October 2002.. 

Footnote 2:It should be noted that Kozlowski sharply disputes whether Federal has any basis to rescind the Policies: he argues that Tyco made the alleged misrepresentations in the 10-K's, and that the "severability" clause in the Policies bars Federal from imputing those tyco's misrepresentations to him. According to Kozlowski, Federal does not allege that he personally made any misrepresentations to the insurer before it issued the Policies.