■ City of New York, Appellant, v Wausau Underwriters Insurance Company et al., Respondents. [45 NYS3d 3]—

Order, Supreme Court, New York County (Frank P. Nervo, J.), entered February 25, 2015, which denied the motion of plaintiff City of New York (the City) for summary judgment declaring that defendant Wausau Underwriters Insurance Company (Wausau) has a duty to defend, indemnify and reimburse the City for defense costs incurred in five underlying personal injury actions, unanimously modified, on the law, to grant partial summary judgment to the City by declaring that Wausau is obligated to defend and reimburse the City for defense costs in the underlying actions titled *Moore-Dixon v Welsbach Elec. Corp.*, *Cruz v City of New York*, *Bog Bae v City of New York*, and *Santana v City of New York* and, upon a search of the record, to grant summary judgment to Wausau by declaring that it has no duty to defend or reimburse the City for defense costs in the underlying action titled *Ramsarran v City of New York*, and otherwise affirmed, without costs.

On this appeal, the issue presented is whether Wausau has a duty to defend the City, which is listed as an additional insured under policies issued by Wausau to one of the City's contractors, Hellman Electric Company (Hellman) with respect to five underlying personal injury actions.[1] For the reasons that follow, we hold that Wausau has a duty to defend the City and reimburse its defense costs in four of those underlying actions, but has no such duty in the remaining action. Accordingly, we now modify the order of Supreme Court denying the City's motion for summary judgment, to the extent of granting summary judgment and declaring that Wausau has a duty to defend and reimburse the City for its defense costs as to four of those actions. With respect to the fifth action, upon searching the record (CPLR 3212 [b]), we grant summary judgment and declare that Wausau has no duty to defend the City or reimburse its defense costs in that underlying action.

## I. Background of the Case

### A. The City's Trade Contracts with Hellman

The City has entered into four trade contracts with defendant Hellman which are relevant to this appeal.

Under the terms of the first trade contract, which was in effect from February 1, 2011 through January 31, 2013, Hellman was to maintain in proper working order all street lighting

---

1. Although the City, by motion for summary judgment, sought a declaration that Wausau had a duty to defend, indemnify, and reimburse the City for defense costs incurred with respect to these five actions, at oral argument and in briefs submitted before this Court, the City stated that it now seeks a ruling solely as to the duty to defend and reimburse defense costs.

devices in the Borough of the Bronx (Bronx Street Lighting Contract). The second contract, effective December 1, 2012 through November 30, 2014, required Hellman to maintain in proper working order all illuminated traffic control devices in the Borough of the Bronx (Bronx Traffic Control Device Agreement). The third contract became effective on December 1, 2009. Under its terms, Hellman was to maintain in proper working order all illuminated traffic control devices in the Borough of Manhattan (Manhattan Traffic Control Device Contract). Although the contract's term was originally to end as of November 30, 2011, by change order dated April 25, 2011, the term of this contract was extended to November 30, 2012. Under the terms of the fourth contract, effective January 24, 2011 through July 23, 2012, Hellman was to perform electrical work in connection with decorative lighting in the Borough of Queens (Queens Street Lighting Contract).

Under the terms of each of these four contracts, Hellman was required to obtain a commercial general liability (CGL) insurance policy naming the City as an additional insured.

## B. The Wausau Insurance Policies

In compliance with the terms of the four trade contracts, Hellman obtained two CGL policies from Wausau, each of which names the City as an additional insured. These policies were in effect for consecutive terms, the first having been in effect from June 27, 2011 through June 27, 2012 (2011-2012 Policy) and the second from June 27, 2012 through June 27, 2013 (2012-2013 Policy). Each of these policies contained an identical additional insured endorsement, which provided in pertinent part:

"The coverage afforded to the additional insured is limited to liability caused, in whole or in part, by the negligent acts or omissions of you [Hellman], your employees, your agents, or your subcontractors, in the performance of your ongoing operations.

"This insurance does not apply to 'bodily injury' . . . arising out of 'your [Hellman's] work' included in the 'products-completed operations hazard' unless you are required to provide such coverage for the additional insured by the written agreement, and then only for the period of time required by the written agreement . . . ."

Both policies further provide, in identical language, that a products-completed operations hazard "[i]ncludes all 'bodily injury' . . . occurring away from premises you [Hellman] own or rent and arising out of . . . 'your [Hellman's] work' except . . . [w]ork that has not yet been completed or abandoned" and that " 'your [Hellman's] work' will be deemed completed . . .

[w]hen all the work to be done at the job site has been completed[.]"

## II. Legal Standards

On a summary judgment motion in a case involving an insurance contract or policy, "[t]he evidence will be construed in the light most favorable to the one moved against" (*Kershaw v Hospital for Special Surgery*, 114 AD3d 75, 82 [1st Dept 2013]). The insured, however, has the burden of showing that an insurance contract covers the loss for which the claim is made (*Kidalso Gas Corp. v Lancer Ins. Co.*, 21 AD3d 779, 780-781 [1st Dept 2005]).

The applicable standard holds that the duty to defend arises when at least one of two alternate criteria are met. "A duty to defend exists whenever the allegations in the complaint in the underlying action, construed liberally, suggest a reasonable possibility of coverage, or where the insurer has actual knowledge of facts establishing such a reasonable possibility" (*DMP Contr. Corp. v Essex Ins. Co.*, 76 AD3d 844, 845 [1st Dept 2010]; *Automobile Ins. Co. of Hartford v Cook*, 7 NY3d 131, 137 [2006]; *Frontier Insulation Contrs. v Merchants Mut. Ins. Co.*, 91 NY2d 169, 175 [1997]; *see Fitzpatrick v American Honda Motor Co.*, 78 NY2d 61 [1991]). "Any . . . exclusion[ ] . . . from policy coverage must be specific and clear in order to be enforced" (*DMP Contr. Corp.*, 76 AD3d at 845-846 [internal quotation marks omitted]).

## III. Discussion

In this case, in order to determine whether Wausau had a duty to defend the City as an additional insured in any or all of five underlying actions, we must examine the allegations in each of the five underlying complaints, construing them liberally, for the suggestion of a reasonable possibility of coverage under the policy for the claims asserted. In addition, we must examine the record with respect to each case to determine whether Wausau had actual knowledge of facts establishing such a reasonable possibility. Among the facts we will examine to determine whether a reasonable possibility of recovery existed are the nature of the occurrence, the time and location of the occurrence and whether the trade contract and policy applicable to work performed at that location were in effect at the time of the alleged occurrence.

### A. The Moore-Dixon Action.

In the first underlying action, *Moore-Dixon v Welsbach Elec. Corp.* (Sup Ct, Bronx County, index No. 300743/13), the complaint alleges that on November 24, 2011, the plaintiff stepped off a curb and into a deep depression and tilted storm

sewer grating at the intersection of West 230th Street and Broadway in the Bronx. The complaint further alleges that the plaintiff's injury was attributable, in part, to defective street lighting at that intersection. At the time of this alleged occurrence, both the Bronx Street Lighting Contract and the 2011-2012 Policy were in effect.

Applying the first *DMP* criterion, because the terms of the 2011-2012 Policy provide that coverage of the additional insured (the City) is limited to liability caused by negligent acts of "you" (Hellman), and the complaint does not mention Hellman, the facial allegations in this complaint, even construed liberally, do not suggest a reasonable possibility of coverage under the 2011-2012 Policy.

Turning to the second *DMP* criterion, the record reveals that on June 7, 2013, James Sanford of the Affirmative Litigation Division of the City's Law Department transmitted a facsimile message to "Claims Manager" at Wausau enclosing a copy of the summons and complaint in the underlying action. Also enclosed with the facsimile message was a copy of an email message dated January 6, 2012 from Joe Mauro, General Foreman-Street Lighting for Hellman, which, according to Sanford, indicates that the street light pole located at the intersection of West 230th Street and Broadway was not repaired until January 2012, weeks after the accident. Therefore, Wausau, having had actual knowledge of facts establishing a reasonable possibility that Moore-Dixon's claim was within the 2011-2012 Policy's indemnity coverage, has a duty to defend the City and reimburse its defense costs as an additional insured. Thus, even construing the evidence in the light most favorable to Wausau, the nonmoving party (*Kershaw v Hospital for Special Surgery*, 114 AD3d at 82), the City has met its burden of showing that the Wausau policy covers the loss for which the claim was made (*Kidalso Gas Corp. v Lancer Ins. Co.*, 21 AD3d at 780-781).

It is of no moment that Hellman, the named insured on the Wausau policy, was not named in the complaint (*see Fitzpatrick v American Honda Motor Co.*, 78 NY2d at 64, 69-70 [holding that insurer had duty to defend principal of named insured notwithstanding that insurer "maintained that it was not required to provide a defense because the complaint did not name (the named insured)"]).

B. The Cruz Action[2]

The complaint in the second underlying action, *Cruz v City*

---

2. According to the City, *Cruz* was settled on or about April 11, 2014 for $30,000. A stipulation of discontinuance of *Cruz*, with prejudice, was filed with the Bronx County Clerk on July 29, 2014.

*of New York* (Sup Ct, Bronx County, index No. 304845/13), alleges that on February 27, 2013, the plaintiff was injured in a collision with a vehicle owned by the City and operated by an employee of the City at the intersection of Westchester Avenue and East 156th Street in the Borough of the Bronx. The complaint further alleges that the plaintiff's injury was attributable in part to a defective traffic light at the intersection. At the time of this occurrence, both the Bronx Traffic Control Device Contract and the 2012-2013 Policy were in effect.

Applying the first *DMP* first criterion, because the terms of 2012-2013 Policy limit coverage for the City, as an additional insured, to liability caused by the negligent acts of "you" (Hellman), and the complaint in *Cruz* does not mention Hellman, the facial allegations in this complaint, even construed liberally, do not suggest a reasonable possibility of coverage under the 2012-2013 Policy.

Nonetheless, an examination of the record through the lens of the second *DMP* criterion reveals that on August 28, 2013, Mr. Sanford of the City Law Department sent a fax to "Claims Manager" at Wausau, enclosing a copy of the summons and complaint as well as a copy of a traffic signal maintenance log showing that a defect in the traffic signal at Westchester Avenue and East 156th Street in the Bronx was reported to Wausau on February 26, 2013, the day before the alleged accident, and that Hellman was the contractor then responsible for maintenance of the traffic signal in question. Thus, Wausau had actual knowledge of facts establishing a reasonable possibility that Cruz's claim was within the 2012-2013 Policy's indemnity coverage. Thus, construing the evidence in the light most favorable to the insurer (*see Kershaw* at 82), the City has met its burden of showing that the 2012-2013 Policy covers the loss for which the claim was made (*Kidalso Gas Corp.* at 780-781), and Wausau has a duty to defend the City and reimburse its defense costs as an additional insured under the 2012-2013 Policy.

Again, it does not matter that Hellman, the named insured on the Wausau policy, was not named in the complaint (*see Fitzpatrick* at 64, 69-70).

C. The Bog Bae Action

A review of the complaint in the next underlying action, *Bog Bae v City of New York* (Sup Ct, New York County, index No. 158960/13), under the first *DMP* criterion shows that the complaint alleges that on September 6, 2012, the plaintiff was injured while operating a motor vehicle which collided with another vehicle at the intersection of East 125th Street and

First Avenue in Manhattan. The complaint further alleges that the plaintiff's injury was attributable in part to a defective traffic control device at the intersection. Both the City and Hellman are named as defendants. At the time of this occurrence, both the Manhattan Traffic Control Device Contract (the effective term of which had been extended to November 30, 2012 by change order) and the 2012-2013 Policy were in effect. Thus, the facial allegations of the complaint, construed liberally, suggest a reasonable possibility of coverage under the 2012-2013 Policy.

Additionally, applying the second *DMP* criterion, the record shows that on October 29, 2013, Mr. Sanford of the City's Law Department transmitted a fax to "Claims Manager" at Wausau, enclosing a copy of the summons and complaint as well as a copy of the police accident report and the traffic signal maintenance log for the period from September 6, 2011 to September 6, 2012, showing that the accident took place on September 6, 2012 and that Hellman was the contractor responsible for maintenance of the traffic signal at that intersection on the day of the accident. Thus, Wausau also had actual knowledge of facts establishing a reasonable possibility that the *Bog Bae* claim was within the 2012-2013 Policy's indemnity coverage. Construing the evidence in the light most favorable to Wausau as the nonmoving party (*see Kershaw* at 82), the City has met its burden of showing that the 2012-2013 Policy covers the loss for which the claim was made (*see Kidalso Gas Corp.* at 780-781), and under both criteria of *DMP*, Wausau has a duty to defend the City and reimburse its defense costs as an additional insured under the 2012-2013 Policy.

D. The Santana Action

A review of the complaint in the next underlying action, *Santana v City of New York* (Sup Ct, New York County, index No. 159575/13), under *DMP*'s first criterion shows that the complaint alleges that on August 22, 2012, the plaintiff was injured when a traffic control box fell from a street pole and struck her on the head at the intersection of Worth Street and Broadway in Manhattan. Both the City and Hellman are named as defendants. As in *Bog Bae*, at the time of this occurrence, both the Manhattan Traffic Control Device Contract (its term having been extended to November 30, 2012 by change order) and the 2012-2013 Policy were in effect. Thus, the facial allegations of the complaint suggest a reasonable possibility of coverage under the 2012-2013 Policy.

Applying the second *DMP* criterion, the record reveals that on December 10, 2013, Mr. Sanford of the City's Law Depart-

ment transmitted a fax to Ms. Sheron Muir of Wausau tendering the City's defense, stating that the City was an additional insured on Hellman's policy and enclosing a copy of the complaint, which alleges that the accident took place on August 22, 2012 and that Hellman was the contractor responsible for maintenance of the traffic signal at that intersection on the day of the accident. Thus, Wausau had actual knowledge of facts establishing a reasonable possibility that the *Santana* claim was within the policy's indemnity coverage. Construing the evidence in the light most favorable to the insurer (*see Kershaw* at 82), the City has met its burden of showing that the 2012-2013 policy covers the loss for which the claim was made (*Kidalso*), and under both *DMP* criteria, Wausau has a duty to defend the City and reimburse its defense costs as an additional insured under the 2012-2013 Policy.

## E. The Ramsarran Action

Examining the fifth of these five underlying actions, *Ramsarran v City of New York* (Sup Ct, Queens County, index No. 704988/13), under *DMP*'s first criterion, the complaint alleges that on August 9, 2012, the plaintiff was injured when he tripped on uneven, broken pavement at a crosswalk at the intersection of Jamaica Avenue and Sutphin Boulevard in Queens County. Both the City and Hellman are named in the complaint.

While the 2012-2013 Policy was in effect at the time of this occurrence, the term of the Queens Street Lighting Contract had expired on July 23, 2012. Although a change order for the contract was approved on May 3, 2012, the change order made clear that the latest extended contract completion date remained July 23, 2012, and there is no subsequent change order in the record. Thus, the accident took place subsequent to the contract completion date.

Had the work at any of the job sites covered by the Queens Street Lighting Contract, including the site of the alleged accident, not been completed, it seems highly likely that following its established practice in its dealings with Hellman, the City would have issued a subsequent change order extending the completion date. There is no such subsequent change order in the record, however. Thus, the record indicates that the work at the site of the alleged accident had been completed prior to the accident, meaning that the work falls within the 2012-2013 Policy's products-completed operations hazard exclusion. As the policy specifically makes clear, bodily injury arising out of Hellman's work included in the products-completed operations hazard is not covered by the policy unless the contract required

Hellman to provide such coverage (*DMP Contr. Corp.*, 76 AD3d at 845-846). The contract merely provides that the CGL insurance policy procured by Hellman "shall be maintained during the term of this Contract[,]" and makes no provision for coverage beyond the term of the contract. Thus, in this underlying action, the facial allegations of the complaint do not suggest a reasonable possibility of coverage under the 2012-2013 Policy.

Turning to the second *DMP* criterion, the record shows that on December 4, 2013, Mr. Sanford of the City's Law Department transmitted a fax to "Claims Manager" at Wausau tendering the City's defense, stating that it was an additional insured on Hellman's policy and enclosing, among other things, a copy of the summons and complaint and information regarding permits obtained by Hellman. This showing is not dispositive, however, in view of a further exclusion in the policy pertaining to work done pursuant to permits issued by the City.

Item 13 of the CGL endorsement to the 2012-2013 Policy, entitled "Additional Insured—State, Municipality or Political Subdivision," provides, in pertinent part:

"Who Is An Insured is amended to include as an additional insured any . . . municipality . . . with respect to any operations performed by you [Hellman], or on your behalf, for which the . . . municipality . . . has issued a permit.

"However, this insurance does not apply to:

"1. 'Bodily injury[ ]' . . . arising out of operations performed for the . . . municipality . . . ."

Here, the record shows that Hellman obtained permits from the City to install decorative lighting for the City at Jamaica Avenue and Sutphin Boulevard in Queens. Because Hellman obtained permits from the City to perform this work for the City, and the plaintiff's bodily injury allegedly arose out of the resulting operations performed by Hellman, the incident at issue in *Ramsarran* is within this 2012-2013 Policy exclusion.

Accordingly, construing the evidence in the light most favorable to the insurer (*see Kershaw* at 82), the City has failed to meet its burden of showing that the 2012-2013 Policy covers the loss for which the claim was made (*see Kidalso Gas Corp.* at 780-781), and Wausau has no duty to defend the City or reimburse its defense costs in this underlying action.

Furthermore, even in the absence of a cross appeal by defendant Wausau, this Court is authorized to search the record and to grant summary judgment in favor of Wausau as to those causes of action seeking a declaration as to Wausau's duty to defend the City and to recover the costs of defense in *Ramsar-*

*ran.* (CPLR 3212 [b]; *Merritt Hill Vineyards v Windy Hgts. Vineyard,* 61 NY2d 106, 110-111 [1984]; *Anderson v Colonial Penn Ins. Co.,* 179 AD2d 504 [1st Dept 1992]). On the facts presented, we conclude that summary judgment should be granted in Wausau's favor as to the *Ramsarran* underlying action and that the ninth and tenth causes of action in the complaint in the instant case should be dismissed. Concur—Renwick, J.P., Moskowitz, Kapnick, Kahn and Gesmer, JJ.